UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------ x
SPV OSUS LTD.,                 :
                               :
            Plaintiff,         :
                               :
       v.                      :
HSBC HOLDINGS PLC, HSBC BANK PLC, :
HSBC BANK USA, NA, HSBC        :
SECURITIES SERVICES (BERMUDA)  :
LIMITED, HSBC INSTITUTIONAL TRUST :
SERVICES (BERMUDA) LIMITED, HSBC :
BANK BERMUDA LIMITED, HSBC     :
SECURITIES SERVICES (LUXEMBOURG) :
S.A., HSBC BANK (CAYMAN) LIMITED, :
HSBC PRIVATE BANKING HOLDINGS  :
(SUISSE) S.A., HSBC PRIVATE BANK :
(SUISSE) S.A., HSBC FUND SERVICES :
(LUXEMBOURG) S.A., SONJA KOHN, :
MARIO BENBASSAT, ALBERTO       :
BENBASSAT, STEPHANE BENBASSAT, :
20:20 MEDICI AG, UNICREDIT BANK :
AUSTRIA AG, BA WORLDWIDE FUND  :
MANAGEMENT LTD., UNICREDIT S.P.A., :
HERALD ASSET MANAGEMENT        :
LIMITED, EUROVALEUR, INC., PIONEER :
ALTERNATIVE INVESTMENT         :
MANAGEMENT LIMITED, ALPHA      :
PRIME ASSET MANAGEMENT LTD.,   :
REGULUS ASSET MANAGEMENT       :
LIMITED, CARRUBA ASSET         :
MANAGEMENT LIMITED, TEREO      :
TRUST COMPANY LIMITED,         :
GENEVALOR, BENBASSAT ET CIE,   :
HERMES ASSET MANAGEMENT        :
LIMITED, THEMA ASSET           :
MANAGEMENT (BERMUDA) LTD.,     :
THEMA ASSET MANAGEMENT         :
LIMITED, EQUUS ASSET           :
MANAGEMENT LIMITED, EQUUS      :
ASSET MANAGEMENT PARTNERS, L.P., :
AURELIA FUND MANAGEMENT        :
LIMITED, INTER ASSET MANAGEMENT :
INC., T+M TRUSTEESHIP & MANAGEMENT SERVICES :
S.A., GTM MANAGEMENT SERVICES CORP. N.V., :
AURELIA ASSET MANAGEMENT       :
PARTNERS, CAPE INVESTMENT      :
ADVISORS LIMITED, and ERWIN KOHN, :
            Defendants.        :
------------------------------ x

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS
BY ALPHA PRIME ASSET MANAGEMENT LTD., REGULUS ASSET
MANAGEMENT LIMITED, CARRUBA ASSET MANAGEMENT LIMITED, AND
TEREO TRUST COMPANY LIMITED**

Alpha Prime Asset Management Ltd. ("APAM"), Regulus Asset Management Limited ("Regulus"), Carruba Asset Management Limited ("Carruba"), and Tereo Trust Company Limited ("Tereo") (collectively, "Movants"), by their undersigned counsel, submit this supplemental memorandum of law in support of Defendants' Memorandum of Law in Support of Their Motion to Dismiss (the "Consolidated Brief"), in order to address unique allegations made against them in the Amended Complaint.[1]

**PRELIMINARY STATEMENT**

The arguments provided in the Consolidated Brief by themselves set forth several bases, each independently sufficient, to warrant dismissal with prejudice of the Amended Complaint as to all Defendants, including Movants. Nonetheless, because additional arguments for dismissal exist that are unique to their situation, Movants offer the following additional arguments solely with respect to themselves in support of their dismissal from this Action.

The most notable fraud in the United States' history was committed by Bernard L. Madoff, who "orchestrated a massive Ponzi scheme through the investment advisory unit of Bernard L. Madoff Investment Securities LLC ('BLMIS'). After the scheme collapsed, Irving S. Picard (the 'Trustee') was appointed trustee for BLMIS pursuant to the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. ('SIPA')." *In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411, 414 (2nd Cir. 2014). Thereafter, the Bankruptcy Trustee commenced litigation in the name of the BLMIS

---

[1] The Movants incorporate by reference all applicable arguments made in the Consolidated Brief and in the declaration and submitted therewith. All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Consolidated Brief.

estate against investment funds that invested in BLMIS ("BLMIS Investor Funds"), "money managers and other professionals who were owed fees" in connection with these investments, and "various subsequent transferees." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 516 B.R. 18, 19-21 (S.D.N.Y. 2014). In these actions, the Bankruptcy Trustee sought to use the provisions of the Bankruptcy Code to avoid transfers to the defendants from BLMIS, either in the form of investment withdrawals or money invested in BLMIS and booked on BLMIS' accounts at the time of Madoff's arrest. *Id*. Underlying the claims was "the Trustee's central contention that all these defendants were sophisticated market participants who, even though they lacked actual knowledge of Madoff's securities fraud, failed to act in good faith because they were aware of suspicious circumstances [i.e. "red flags"] that should have lead them to investigate the possibility of such fraud." *Id*. at 21. Ultimately, such "inquiry claims" were rejected, the courts finding no duty of inquiry. *Id*. Plaintiff alleges itself the assignee of Optimal, was one of the investment fund defendants called out in the Bankruptcy Trustee for litigation on these claims. At "an early stage in this litigation", Optimal entered into a settlement agreement in which it and its related entity co-defendant paid the Bankruptcy Trustee $233,750,000 in settlement of these bankruptcy avoidance claims. *Picard v. JPMorgan Chase & Co*., 2014 Bankr. LEXIS 3448 (Bankr. S.D.N.Y. October 10, 2014) at * 1. In the present action, Plaintiff appropriates the Bankruptcy Trustee's claims and pleaded facts, apparently with almost no independent investigation and with almost no additional facts and attempts to "translate" the Bankruptcy Trustee's federal bankruptcy causes of action against the investment funds into state law claims against the service providers of those same investment funds. Not surprisingly, the Plaintiff's effort to piggy-back the Bankruptcy Trustee's work product fails in translation at every level of pleading.

At the time Plaintiff filed its complaint, it filed a virtually mirror-image complaint (the "UBS Action") against various UBS AG and Access Management defendants (the "UBS Defendants"), which like the Defendants herein, were also service providers of BLMIS investment funds. Like the present action, the UBS Action was filed in New York state court and removed to federal court, where it was quickly dismissed by the United States District Court.  That dismissal was subsequently affirmed in a recent decision by the Second Circuit Court of Appeals, *SPV Osus, Ltd. V. UBS AG, et al*., 882 F.3d 333 (2nd Cir. 2018) (the "UBS Decision").  Even though UBS is an international organization with numerous offices in the United States—something not true of the Movants, who are not alleged to have any U.S. offices—the Court of Appeals found neither general nor specific jurisdiction over them in the UBS Action.

In the face of allegations of specific jurisdiction based upon claims of alleged "assistance" to the Ponzi Scheme, allegations recycled word for word here, the Second Circuit held "the connections between the UBS Defendants, SPV's claims, and its chosen New York forum, are too tenuous to support the exercise of specific jurisdiction." *Id*. at 344.  The analysis of the Second Circuit, based on essentially the same facts, provides a persuasive model to this Court of why personal jurisdiction cannot be exercised here.

Movants, like the Plaintiff's assignor Optimal, are *completely foreign* entities who conduct business in *foreign* offices and have no presence in the United States.  Three of the four Movants provided investment advice to *foreign* investment funds (who are not named as defendants herein) who eventually became investors in BLMIS.  The fourth Movant, Tereo, also a completely foreign entity, is not alleged to have provided any services to anyone and is merely alleged an "owner" of the other Movants.

Personal jurisdiction cannot be imposed against any of the Movants. <u>First</u>, under the U.S. Supreme Court decision in *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014), there is no possibility of *general* jurisdiction over the Movants, since the Movants are neither headquartered in New York nor organized under New York law. <u>Second</u>, there exists no basis for exercising *specific* jurisdiction over Movants. The Amended Complaint offers no facts to establish minimum contacts specific to Movants, and merely pleads group allegations that themselves are merely conclusions as to personal jurisdiction. Even if the scanty facts pled by the Amended Complaint were deemed to be true, these few facts are insufficient to establish personal jurisdiction as a matter of law. Finally, there are no allegations linking the alleged contacts and Optimal's investment in BLMIS—in fact, the opposite: for the chronology reflected in the Amended Complaint shows that Optimal had been invested in BLMIS for years prior to the creation of the investment funds that retained Movants.

## BACKGROUND

### A. The Allegations of the Amended Complaint

**(i)     Framework Allegations**

According to the Amended Complaint, Plaintiff is a Bahamian entity that is the assignee of a Madoff investment fund, Optimal. Amended Complaint at ¶ 21. The Amended Complaint alleges claims of aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and aiding and abetting conversion against over forty defendants, including the Movants. Amended Complaint, ¶¶ 411-443 (Counts). The Amended Complaint's central contention is that "from before OSUS began investing in BLMIS in 1997, conduct by Defendants was propping up the Ponzi scheme, helping to facilitate its operations, and cloaking BLMIS with an air of legitimacy. Such conduct was thus a proximate cause of OSUS's being induced to invest in BLMIS in the first

instance. Defendant's continuing conduct further perpetuated the Ponzi scheme throughout the entire period that OSUS maintained and increased its investment in BLMIS." Amended Complaint, ¶ 40.

The Amended Complaint divides the long roster of Defendants into several groups, the largest, labeled, "Management Defendants," includes Movants. Amended Complaint at ¶¶ 56-74.

### (ii) Jurisdictional Allegations Against the "Management Defendants"

The *entirety* of the personal jurisdiction allegations asserted against Movants are *group* allegations, in which the various members of the group "Management Defendants" are lumped together without differentiation. Plaintiff asserts that the Court has personal jurisdiction over the "Management Defendants" under both CPLR 301 and 302. Amended Complaint at ¶ 129. The personal jurisdiction allegations against the Management Defendants are as follows:

> 129.   …All of the Management Defendants maintained minimum contacts with New York in connection with these claims. In addition, all of the Management Defendants routinely directed the transfer of investor funds to, and the receipt of investor funds from, BLMIS in New York; derived significant revenues from the purported sales and purchases of securities in New York; and committed tortious acts, both within and outside of New York, causing injury within New York. The Management Defendants reasonably should have expected those acts to have consequences in New York, and derived substantial revenue from interstate or international commerce.
>
> 130.   Upon information and belief, the Management Defendants and/or their agents communicated regularly with persons in New York regarding BLMIS, and their agents communicated with BLMIS on multiple occasions in connection with these allegations.
>
> 131.   Upon information and belief, certain Management Defendants delivered to BLMIS's headquarters in New York account opening documents, including agreements, relating to BLMIS accounts maintained for the HSBC-related Feeder Funds.

> 132. Upon information and belief, the Management Defendants all received BLMIS account statements and trade confirmations, and derived substantial revenue based on the purported trading activities of BLMIS.

Amended Complaint, ¶¶ 129-132.

In the *entire* 437-paragraph Amended Complaint, the *only* allegations specific to the Movants, <u>none of which allege contacts with the forum</u>, are the following:

> 63. <u>Alpha Prime Assets Management Ltd.</u> ("Alpha Prime Management") is a company organized under the laws of Bermuda with a registered address at 83 Front Street, Hamilton HM 12, Bermuda. Alpha Prime Management served as the investment manager to Alpha Prime. Upon information and belief, Alpha Prime Management received fees and/or distributions of at least $16 million to which it is not entitled. As a term of a partial settlement agreement entered into by Alpha Prime and the SIPA Trustee on February 9, 2018, Alpha Prime Management agreed to participate in discovery requests made by the SIPA Trustee, including the giving of a deposition.
>
> 64. <u>Regulus Asset Management Limited</u> ("Regulus") is a company organized under the laws of Bermuda with a registered address at 83 Front Street, Hamilton HM 12, Bermuda. Regulus served as the investment manager to Senator. Upon information and belief, Regulus received fees and/or distributions to which it is not entitled.
>
> 65. <u>Carruba Asset Management Limited</u> ("Carruba") is a company organized under the laws of Bermuda with a registered address at 83 Front Street, Hamilton HM 12, Bermuda. Carruba served as the investment manager to Senator. Upon information and belief, Carruba received fees and/or distributions to which it is not entitled.
>
> 66. <u>Tereo Trust Company Limited</u> ("Tereo Trust") is a company organized under the laws of Bermuda with a registered address at Swiss Fund Services, 83 Front Street, Hamilton HM 12, Bermuda. Tereo Trust wholly owns Alpha Prime Management, Regulus and Carruba. Upon information and belief, Tereo Trust received fees and/or distributions to which it is not entitled.

Amended Complaint, ¶¶ 63-66.

The only other specific allegations against any of the Movants is also irrelevant to personal jurisdiction. It states: "Alpha Prime transferred to…Alpha Prime Asset Management approximately $16,767,897 in monthly management fees and annual performance fees for serving as Alpha Prime's investment manager from June 1, 2003 to December 2008." Amended Complaint, ¶ 352.

Non-party Alpha Prime is defined in the Amended Complaint as "an investment fund organized under the laws of Bermuda that invested directly with BLMIS." Amended Complaint, ¶ 44. Non-party Senator Fund is defined in the Amended Complaint as "an investment fund organized under the laws of the Cayman Islands that invested directly with BLMIS." Amended Complaint, ¶ 45. Even though Alpha Prime and Senator Fund are not parties to this action, they, along with the other investment funds that appear in the voluminous complaint, along with numerous non-party individuals, bear the primary attention of the Amended Complaint's allegations, a residual effect of the fact that the Amended Complaint merely tracks the Bankruptcy Trustee's litigation where these non-parties are, in fact, parties, and adds to the confusing challenge of trying to tease out allegations from a narrative that pleads facts against non-parties and legal conclusions against parties.

Despite the allegations that the Movants received management fees to which they are "not entitled" the Amended Complaint does not allege any connection between Plaintiff, Optimal, or even BLMIS in relation to these fees. The only allegation as to the nature and source of these fees is the single allegation quoted above that Alpha Prime paid APAM "monthly management fees and annual performance fees for serving as Alpha Prime's investment manager from June 1, 2003 to December 2008." Amended Complaint, ¶ 352.

The Amended Complaint does not assert *any* business relationship or connections between Plaintiff and Movants, or between its assignor Optimal and Movants.  No common transactions, involving fees, investments, or anything else, are alleged to exist between Plaintiff itself, directly or through its assignor, and Movants.  Not even *communications* are alleged to have occurred between Movants and either Plaintiff or Optimal.  Accordingly, the fact is not disputed that Plaintiff, Optimal and Movants are and have always been *complete strangers* to each other.

Even more egregiously from the perceptive of establishing personal jurisdiction, Plaintiff does not assert a single fact as to any of the Movants by name to show they are anything but complete strangers to the United States as well.  Thus, the Amended Complaint does not allege any of the minimum contacts that would be expected in a case of this sort.  While admitting the Movants are foreign entities headquartered in foreign countries, the Amended Complaint does not allege they conduct business in the United States, does not allege they are authorized to conduct business in the United States, does not allege bank accounts here, or offices, or employees, or telephone numbers, or agents here.  Instead, Plaintiff provides conclusory group "contact" allegations to assert personal jurisdiction in which Plaintiff throws the Movants into the broadest category of "management", a category into which it lumps entities as diverse as "financial institutions, hedge funds, investment advisors, managers, and/or promoters" as if such roles were interchangeable.  Amended Complaint ¶ 13.  As to Tereo, the situation is even more attenuated in that Tereo is not alleged to have performed any services or to conduct any specific business but is simply alleged to "own" the other Movants.  Id. at ¶ 66

## ARGUMENT

### I.   The Complaint Should Be Dismissed for Lack of Personal Jurisdiction

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). A plaintiff cannot satisfy its burden by relying on "conclusory non-specific allegations to establish jurisdiction," and in assessing the sufficiency of the allegations, this Court may not "accept as true a legal conclusion couched as a factual allegation." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998).

As discussed, the Amended Complaint lumps together Movants with multiple other defendants, including banks, hedge funds, and promoters, as "Management Defendants." Plaintiff asserts in the Amended Complaint that the Court has personal jurisdiction over all the members of this undifferentiated class under both New York CPLR 301 and 302. Amended Complaint ¶ 127-130.

Without differentiating a single "management defendant" Plaintiff broadly alleges that "all the Management Defendants routinely directed the transfer of investor funds to, and the receipt of investor funds from, BLMIS in New York; derived significant revenue from the purported sales and purchases of securities," and that the Management Defendants committed tortious acts in and outside of New York that caused injury and other consequences in New York. *Id.* Furthermore, Plaintiff alleges that the Management Defendants or its [sic] agents communicated regularly with persons in New York, delivered account opening documents and agreements to New York, and received statements and confirmations and derived revenue from activity in New York. *Id.*

None of these allegations supply the basic facts of notice pleading, like who, whom, when, and where; none supply a single detail of what "tortious acts" are meant, or which of those were

10

committed "in" and which ones committed "outside" New York, nor even what "activity" was "conducted" in New York from which "revenue" was "derived." None of these alleged facts, whether taken individually or together, are sufficient as a matter of law to support a finding of personal jurisdiction over Movants.

### A. The Complaint Fails to Allege Any Facts to Establish that the Court Has General Jurisdiction

In its landmark case, *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014), the United States Supreme Court held that an exercise of general jurisdiction is only appropriate where a defendant corporation is "at home" in the jurisdiction, that is, having its principal place of business or its place of incorporation within the jurisdiction. *Id*. at 754.

While Plaintiff invokes the applicability of CPLR 301 general jurisdiction, it alleges (correctly) that all the Movants were formed pursuant to foreign laws (Bermuda) and have their principal place of business in a foreign country (Bermuda). Amended Complaint, ¶¶ 63-66. No allegations appear in the Amended Complaint to give any substance to the conclusion that the Movants are in any way, shape, or form, "at home" in New York. Because Plaintiff cannot show that Movants are incorporated in New York or have their principal place of business in New York, the Court does not have general jurisdiction over Movants. *See Daimler*, 134 S. Ct. at 754.

### B. The Complaint Fails to Allege Sufficient Facts to Establish that the Court Has Specific Jurisdiction

Plaintiff alternatively alleges that jurisdiction over the Management Defendants, including Movants, is proper as an exercise of specific jurisdiction under New York's long-arm statute set forth in CPLR 301. Amended Complaint at ¶ 129.

Plaintiff fails to specify even what subparts of CPLR 302(a) justify this Court's exercise of jurisdiction over the Management Defendants, let alone plead facts specific to Movants.

Instead, Plaintiff's complaint parrots the rule's language while making sweeping general assertions that the Management Defendants transferred funds and exchanged communications with BLMIS in New York. See Complaint at ¶¶ 102-105. Such generic, group pleading is not sufficient to demonstrate that the exercise of personal jurisdiction is appropriate under CPLR 302(a). *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (holding that a "conclusory statement" that was a "a restatement, with slight changes, of the legal standard" for personal jurisdiction is inadequate); *Plunkett v. Doyle*, 2001 WL 175252 at *3 (S.D.N.Y. February 22, 2001) (stating that allegations without a "factual basis" that "repeat the statutory language" are insufficient); see also, *Shareholder Representative Servs. LLC v. Sandoz Inc.*, 2015 WL 1209358 at *8 (Sup. Ct. N.Y. County March 16, 2015) (rejecting fraud claims made through group pleading as insufficient to provide personal jurisdiction over individual defendants).

"The inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). "The defendant's suit-related conduct must create a substantial connection with the forum State." *Id*. at 1121.

Here, no elements of Plaintiff's claims arise from Movants' alleged contacts with the forum. The theory of each of Plaintiff's claims against the Management Defendants (including Movants) is that the Management Defendants missed or ignored so-called red flags that would have alerted them to Madoff's fraud. Those purported missed opportunities consisted of such things as failing to examine account statements and trade confirmations for discrepancies; not being wary of Madoff acting as his own custodian, his desire for secrecy or retention of a small accounting firm; not realizing that BLMIS' returns were suspiciously consistent across all markets and sometimes deviated from his proclaimed strategy; and failing to heed reports that allegedly

reached the Management Defendants questioning Madoff's bona fides. *See*, Amended Complaint ¶¶ 142-263.

But what the Amended Complaint wishes to gloss over—because it would be fatal to the assertion of personal jurisdiction over Movants and the other Management Defendants—is the Amended Complaint's complete disconnect between the jurisdictional acts pled (the alleged events in New York) and the alleged omissions and inactions which comprise the heart of Plaintiff's claims. Thus, the fact that BLMIS sent account statements or confirmations from New York is irrelevant. Rather, Plaintiff's claims rest on the Movants' *alleged failures in Bermuda* to assess the information these account statements contained. Thus, the entirety of the alleged actionable errors and omissions occurred *outside the United States,* where Movants conduct their respective businesses.

In short, because the causes of action do not arise from the jurisdictional contacts with New York by Defendants, but instead from activities that were occurring outside New York, CPLR 302(a)(1) provides no basis for exercising personal jurisdiction over the Movants. *See, J.L.B. Equities, Inc. v. Ocwen Fin. Corp*., 131 F. Supp. 2d 544, 551-552 (S.D.N.Y. 2001) (holding that there is no jurisdiction because defendants contacts with New York in connection with an Asset Agreement were irrelevant to a claim arising out of a Fee Agreement); *Davis v. Scottish Re Group Ltd*., 2014 N.Y. Misc. LEXIS 5718 at * 31 (Sup. Ct. N.Y. County) ("[T]he claims against the Benton Entities do not arise from the terms of the Merger Agreement, or any breach thereof. Instead they arise from the provision of allegedly inaccurate information to shareholders prior to the shareholders' vote to approve the Merger. Accordingly, *the relationship between the transaction of business in New York by the Benton Entities and the claims asserted against them*

*is insufficient to support an exercise of personal jurisdiction in this court on the basis of CPLR 302(a)(1)".*) [emphasis added].

The Plaintiff also alleges that the Management Defendants are subject to the Court's specific jurisdiction because the Management Defendants "routinely directed the transfer of investor funds to, and [received] investor funds from BLMIS in New York." Amended Complaint at ¶ 127. However, it is well-settled that investing directly in a United States company or owning a stake in a United States company is insufficient, on its own, to establish the requisite minimum contacts with the United States to support personal jurisdiction over a foreign defendant. *Novelaire Techs., L.L.C. v. Munters AB*, 2013 U.S. Dist. LEXIS 168192 at *34 (S.D.N.Y. 2013) (applying New York law) (holding that stock ownership in a New York company insufficient as a minimum contact to provide personal jurisdiction); *Searcy v. Knight*, 2009 WL 8602809 at *8 (Bankr. W.D. La. December 22, 2009) (holding "a defendant's investment in a company that is based in the forum is generally not a sufficient basis for personal jurisdiction); *Central States v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) (holding that personal jurisdiction cannot be based on stock ownership alone); *Blau v. Martin*, 167 N.Y.S. 2d 662, 665 (Sup. Ct. N.Y. County 1957) (same). The mere transmittal of funds into an investment fund in New York is also inadequate to establish constitutionally sufficient minimum contacts required to create personal jurisdiction. *See, Transatlantic Shiffahrtskontor GmBh v. Shanghai Foreign Trade Corp.*, 996 F. Supp. 326, 335 (S.D.N.Y. 1998). In addition, as with the other allegations, there is no "substantial relationship" between investing with BLMIS, and the errors and omissions that allegedly give rise to the claims asserted by the Plaintiff.

The allegation that the Movants and other Management Defendants "communicated regularly" with New York is jurisdictionally irrelevant. Plaintiff fails to show that these

communications were anything more than the incidental consequences of the Management Defendants' fulfillment of their obligations to provide investment advisory and management services to foreign feeder funds under foreign agreements. Such peripheral contacts with this forum cannot give rise to personal jurisdiction. *See Hau Yin To v. HSBC Holdings PLC*, No. 15CV3590-LTS-SN, 2017 WL 816136, at *5 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) (finding communications with BLMIS in connection with fulfilling duties under foreign contracts insufficient to confer jurisdiction under the New York long-arm statute); *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 340 (S.D.N.Y. 2016) (same); *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1322 (S.D. Fla. 2010), *aff'd sub nom. Inversiones Mar Octava Limitada v. Banco Santander S.A.*, 439 F. App'x 840 (11th Cir. 2011) (same).

On the basis of virtually identical allegations by the same Plaintiff against other defendants in the UBS Action, the Second Circuit held that "the connection between the UBS Defendants, SPV's Claims, and its chosen New York forum are too tenuous to support the exercise of specific jurisdiction... At bottom, the contacts alleged by SPV between the UBS Defendants, the forum, and the litigation amount to a handful of communications and transfers of funds. These limited contacts are insufficient to allow the exercise of specific personal jurisdiction over the UBS Defendants." *UBS Decision*, 882 F.3d at 344-345.

Another aspect of the Second Circuit's holding in the UBS Decision equally applies to Movants. "Missing from the complaint is any allegation that Osus relied on UBS's contacts with the feeder funds when Osus decided to invest directly with BLMIS. Nor are there any allegations that Osus based its decision to invest with BLMIS on the fact that the UBS Defendants helped create and service the feeder funds. Indeed, Osus began investing in BLMIS in 1997, and the feeder funds were not created until 2003...and 2004." *Id*. at 345. The same applies here. Optimal

15

(*e.g*. Osus) first invested in BLMIS in "January 1997." Amended Complaint, ¶ 24. APAM did not become Alpha Prime's investment manager until June 2003. *Id*. at 350. While the Amended Complaint does not provide a date for the iniation of Regulus and Caruba's retention by Senator Fund, it does reflect that Senator Fund was not created until September 2006. *Id.* at ¶ 273. As to Tereo, as noted, the only involvement alleged against it is that Tereo "wholly owns" APAM. Regulus and Caruba. *Id.* at ¶ 273. Accordingly, its involvement is not alleged until June 2003, when APAM is alleged to have been retained by Alpha Prime. In addition, under controlling law, specific jurisdiction cannot solely be based on equity ownership in another company. *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) ("the presence of [a] subsidiary alone does not establish the parent's presence in the state")

## CONCLUSION

For the foregoing reasons, Alpha Prime Asset Management Ltd., Regulus Asset Management Limited, Carruba Asset Management Limited, and Tereo Trust Company Limited request that the Court enter an Order dismissing the Amended Complaint with prejudice as to them in its entirety.

Dated: September 21, 2018
      New York, New York

**DUFFYAMEDEO LLP**
By: /s/ Todd E. Duffy
    Todd E. Duffy
    Douglas A. Amedeo
275 Seventh Avenue, 7th Floor
New York, NY 10001
Tel: (212) 729-5832
Fax: (212) 208-2437
Attorneys for Alpha Prime Asset Management Ltd., Regulus Asset Management Limited, Carruba Asset Management Limited, and Tereo Trust Company Limited.