UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SPV OSUS LTD.,

                    Plaintiff,

        -against-

HSBC HOLDINGS PLC, HSBC BANK PLC, HSBC BANK USA, NA, HSBC USA INC., HSBC SECURITIES SERVICES (BERMUDA) LIMITED, HSBC INSTITUTIONAL TRUST SERVICES (BERMUDA) LIMITED, HSBC BANK BERMUDA LIMITED, HSBC SECURITIES SERVICES (LUXEMBOURG) S.A., HSBC BANK (CAYMAN) LIMITED, HSBC PRIVATE BANKING HOLDINGS (SUISSE) S.A., HSBC PRIVATE BANK (SUISSE) S.A., HSBC FUND SERVICES (LUXEMBOURG) S.A., SONIA KOHN, MARIO BENBASSAT, ALBERTO BENBASSAT, STEPHANIE BENBASSAT, 20:20 MEDICI AG, UNICREDIT BANK AUSTRIA AG, BA WORLDWIDE FUND MANAGEMENT LTD., UNICREDIT S.P.A., HERALD ASSET MANAGEMENT LIMITED, EUROVALEUR, INC., PIONEER ALTERNATIVE INVESTMENT MANAGEMENT LIMITED, ALPHA PRIME ASSET MANAGEMENT LTD., REGULUS ASSET MANAGEMENT  LIMITED, CARRUBA ASSET  MANAGEMENT LIMITED, TEREO TRUST COMPANY LIMITED, GENEVALOR,  BENBASSAT ET CIE, HERMES ASSET MANAGEMENT LIMITED, THEMA ASSET MANAGEMENT (BERMUDA) LTD., THEMA ASSET MANAGEMENT LIMITED, EQUUS ASSET MANAGEMENT LIMITED, EQUUS ASSET MANAGEMENT PARTNERS, L.P., AURELIA FUND MANAGEMENT LIMITED, INTER ASSET MANAGEMENT INC., T+M TRUSTEESHIP & MANAGEMENT SERVICES S.A., GTM MANAGEMENT SERVICES CORP. N.V., AURELIA ASSET MANAGEMENT PARTNERS, CAPE INVESTMENT ADVISORS LIMITED and ERWIN KOHN,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

No. 1:18-cv-03497-AJN

**PLAINTIFF SPV OSUS LTD.'S MEMORANDUM OF LAW IN OPPOSITION TO HSBC DEFENDANTS' MOTION TO DISMISS**

**PLAINTIFF SPV OSUS LTD.'S MEMORANDUM OF LAW
IN OPPOSITION TO HSBC DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

I.    The HSBC Defendants Are Subject to Personal Jurisdiction in this Court. ...................... 2

    A.    Standards for Determining Personal Jurisdiction ................................................. 2

    B.    SPV's Amended Complaint Specifies Jurisdictional Allegations as to Each HSBC Defendant. ............................................................................................... 2

        1.    HSBC Defendants ..................................................................................... 3

        2.    HSBC Administrator Defendants ............................................................. 4

        3.    HSBC Custodian Defendants .................................................................... 5

        4.    Individual HSBC Defendants ................................................................... 6

            a.    HSBC Holdings plc ...................................................................... 6

            b.    HSBC Private Bank Holdings (Suisse) S.A. .................................. 7

            c.    HSBC Private Bank (Suisse) S.A. ................................................ 7

            d.    HSBC Bank plc ............................................................................ 7

            e.    HSBC Bank Bermuda Limited ..................................................... 9

            f.    HSBC Securities Services (Bermuda) Limited ........................... 10

            g.    HSBC Securities Services Luxembourg ...................................... 11

            h.    HSBC Bank (Cayman) Limited .................................................. 12

            i.    HSBC Institutional Trust Services (Bermuda) Limited ............... 13

    C.    In the Alternative, Jurisdictional Discovery Should Be Permitted. ...................... 14

II.    SPV's Claims Against HSBC Bank USA are Timely Asserted. ..................................... 14

III.    SPV's Complaint Adequately States Aiding and Abetting Claims. ................................. 14

    A.    HSBC's Purported Due Diligence Establishes Actual Knowledge and Conscious Avoidance ............................................................................................ 15

B.     Their Investments Do Not Absolve HSBC Defendants of Complicity. ............... 15

C.     HSBC Defendants' Activities Establishes Substantial Assistance. ...................... 15

CONCLUSION ...................................................................................................................... 15

CERTIFICATE OF SERVICE ............................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Agape Litig.*,
   773 F. Supp. 2d 298 (E.D.N.Y. 2011) ..................................................................15

*Albino v. Global Equipment USA, Ltd.*,
   2017 WL 372056 (S.D.N.Y. Jan. 26, 2017) ..........................................................14

*American Pipe & Const. Co. v. Utah*,
   462 U.S. 345 (1983)...............................................................................................14

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*,
   479 F. Supp. 2d 349 (S.D.N.Y. 2007)...................................................................15

*Hau Yin To v. HSBC Holdings PLC*,
   2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir.
   2017) ...........................................................................................................2, 6, 7, 8

*Hollins v. U.S. Tennis Ass'n*,
   469 F. Supp. 2d 67 (E.D.N.Y. 2006) ....................................................................14

*JP Morgan Chase Bank v. Winnick*,
   406 F. Supp. 2d 247 (S.D.N.Y. 2005)...................................................................15

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006)..................................................................................15

## PRELIMINARY STATEMENT

The supplemental memorandum of law brought by the HSBC Defendants[1] fails to provide any additional grounds for dismissal of SPV's claims. Indeed, the arguments made in the memorandum are largely a re-hash of those made in the Consolidated Brief. They are hardly "unique," as the HSBC Defendants claim (Dkt. #74 at 1), and can be rejected on the same grounds SPV has already briefed in Memorandum of Law in Opposition to Defendants' Motion to Dismiss responding to the Consolidated Brief ("Main Response"). As shown there (and again here), this Court has personal jurisdiction over each of the HSBC Defendants due to their extensive activities directed to the United States related to the Madoff fraud, from which SPV's claims arise. SPV also has adequately pled aiding and abetting claims against the HSBC Defendants, in particular showing how they rendered substantial assistance to the fraud in their dual roles of service providers and marketers. SPV's claims also are timely, including against HSBC Bank USA Inc., due to the pendency of common law claims brought by the SIPA Trustee, which tolled limitations until their final adjudication by the United States Supreme Court in June 2014.

This response primarily addresses personal jurisdiction allegations as to the HSBC defendants. These defendants' additional arguments for dismissal are addressed more fully in SPV's Main Response, which is incorporated in its entirety herein by reference. The legal standard for a showing of specific personal jurisdiction is also discussed in SPV's Main Response.

---

[1]     The HSBC Defendants include the following entities: HSBC Holdings plc ("HSBC Holdings"); HSBC Bank plc ("HSBC Bank"); HSBC Securities Services (Bermuda) Limited ("HSSB"); HSBC Institutional Trust Services (Bermuda) Limited ("HITSB"); HSBC Bank Bermuda Limited ("HSBC Bank Bermuda"); HSBC Securities Services (Luxembourg) S.A. ("HSSL"); HSBC Bank (Cayman) Limited ("HSBC Cayman"); HSBC Private Banking Holdings (Suisse) S.A. ("HSBC Private Banking Holdings"); HSBC Private Bank (Suisse) S.A. ("HSBC Private Bank (Suisse)"); HSBC Bank USA, NA ("HSBC Bank USA"); and HSBC USA Inc. ("HSBC USA Inc.").

**ARGUMENT**

**I.      The HSBC Defendants Are Subject to Personal Jurisdiction in this Court.**

**A.      Standards for Determining Personal Jurisdiction**

As described in its Main Response, SPV has alleged specific jurisdictional facts as to each HSBC Defendant.  In particular, it has utilized defined terms which embrace specified defendants that played similar roles in the Madoff fraud, including as to the nature of their conduct directed to the United States.  When a given jurisdictional allegation is made with reference to one of the defined terms, it must be read as alleging that specific fact as against each individual Defendant included within the defined term.  *See, e.g.*, *Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136, at *1-*2 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) (considering allegations pleaded against various HSBC entities included within each of multiple defined terms).  In addition, where appropriate, SPV has alleged additional information as to individual defendants concerning the nature and extent of their U.S.-directed conduct in support of the Madoff fraud. These contacts, as described below, satisfy the minimum contacts required for the exercise of personal jurisdiction.

**B.      SPV's Amended Complaint Specifies Jurisdictional Allegations as to Each HSBC Defendant.**

The HSBC defendants were intimately involved in all aspects of the New York-based Madoff fraud.  They served as custodian and administrator to the many feeder funds that invested with Madoff.  The HSBC defendants also were an active marketer of BLMIS and the feeder funds who invested in BLMIS.  Many of these roles were overlapping, with some HSBC defendants serving as both custodian and administrator, and sometimes involved in marketing as well.  In the Amended Complaint, SPV provides a detailed account of how each of the HSBC defendants participated in the Madoff fraud, and in doing so, availed themselves of the New York forum.

### 1.    HSBC Defendants

As described in the Amended Complaint (Dkt. #67), certain acts and omissions committed in New York were common to the following HSBC entities who were involved in the Madoff fraud, referred to as the "HSBC Defendants": HSBC Holdings, HSBC Bank, HSBC Private Banking Holdings (Suisse), HSBC Private Bank (Suisse), HSSB, HSSL, HSBC Cayman, and HSBC Bank Bermuda. (¶92)  Two additional HSBC entities do not contest personal jurisdiction—HSBC Bank USA, NA and HSBC USA Inc.  (Dkt. #73 n.11)

The Amended Complaint sets forth a long list of New York-centered conduct that is attributable to each of the HSBS Defendants. Each of the HSBC Defendants invested or assisted others to invest in New York; entered into agreements in New York and delivered agreements to BLMIS in New York; communicated regularly with persons in New York; sent money to and received money from BLMIS in New York; and derived significant revenue from BLMIS in New York.  (¶136)  More specifically, this New York-based conduct was carried out in a variety of means, including the delegation by the HSBC Defendants of their responsibilities as custodians and administrators to BLMIS in New York (¶10); their hiring of KPMG who investigated and uncovered the fraud in New York and advised the HSBC Defendants of the ongoing fraud (¶11); and their creation of the Global Structured Fund Product Group ("GSFP Group") which then marketed investment products to HSBC customers (¶288) and whereby the HSBS Defendants became aware of serious indicia of fraud involving BLMIS (¶¶291-95.  The HSBC Defendants were also participants in conduct occurring in New York which should have or in fact did alert them to the Madoff fraud, including receiving confirmations from BLMIS which routinely showed that trades were outside the daily pricing range (¶198); failing to question how BLMIS funded negative cash balances on behalf of customers which amounted to interest-free loans (¶231); and acquiescing to Madoff's refusal to provide electronic confirmations. (¶225) Through these acts

and others, the HSBC Defendants oversaw the infusion of $8.9 billion into New York for the explicit purpose of funding the BLMIS fraud (¶16), and in the process, enabled, prolonged, and worsened the New York-based Madoff fraud. (¶93)

### 2.    HSBC Administrator Defendants

The Amended Complaint makes specific allegations regarding the conduct of HSSB, HSBC Bank Bermuda, and HSSL, in their capacities as HSBC Administrator Defendants, whereby they undertook substantial commercial activities in New York.  (¶97)

As alleged in the Amended Complaint, the primary responsibility of the HSBC Administrator Defendants was to calculate the net asset value ("NAV") for those feeder funds, all of which were invested with BLMIS in New York, for which they acted as administrator.  (¶97) The HSBC Administrator Defendants also acted as agents for those funds for purposes of dealing with BLMIS in New York. (¶137)  As a result, they were responsible for day-to-day administration of the funds, which entailed, among other things, issuing and redeeming fund shares, and maintaining the books and records of those funds.  (¶334)

In carrying out their responsibilities, the HSBC Administrator Defendants rendered substantial assistance to the perpetuation of the BLMIS fraud, through their New York conduct. In particular, they provided a calculation of "net asset value" for the funds that falsely portrayed the actual condition of the funds, which meaningfully perpetuated and prolonged the Madoff fraud. (¶¶415, 423)  In addition, they were aware or should have been aware of numerous indicia of fraud in the trading records of those accounts for which they were administrators, all of which reflected purported trading activity occurring in New York.  (*See, e.g.*, ¶¶195, 200, 212. 220, 233, 238, 259) The HSBC Administrator Defendants also failed to carry out their responsibility for valuing over-the-counter options contracts, including identification of counterparties, all of which should have occurred in New York, which enabled the continuation of the Madoff scheme in New York.  (¶335)

### 3.      HSBC Custodian Defendants

The Amended Complaint makes specific allegations regarding the conduct of HITSB, HSBC Bank Bermuda, and HSSL, in their capacities as HSBC Custodian Defendants, whereby they undertook substantial commercial activities in New York.  (¶98)

As alleged in the Amended Complaint, the primary responsibility of the HSBC Custodian Defendants was to safeguard the assets of those funds for which they acted as custodian.  (¶98) To that end, the HSBC Custodian Defendants were contractually obligated to make sure that Madoff had the customer funds he claimed to possess in New York.  (¶202)  They were also responsible for maintaining separate accounts, overseeing the payment and administration of funds, and otherwise transferring, exchanging, or delivering securities as directed by the feeder funds invested with BLMIS in New York.  (¶324)

In derogation of those duties, all HSBC Custodian Defendants except HITSB executed one or more sub-custody agreements with BLMIS, whereby they delegated their responsibilities to BLMIS in New York, thus concentrating in BLMIS the functions of investment advisor, custodian, and broker-dealer.  (¶¶139, 151)  In fact, the HSBC Custodian Defendants performed no independent oversight over Madoff (¶326), thus playing an indispensable role in allowing the New York-based fraud to grow (¶¶326-27).  They collected millions in fees (¶325), all of which emanates from the New York-based fraud they helped perpetrate (¶¶349-52).

As custodians and sub-custodians, the HSBC Custodian Defendants directed and facilitated the transfer of billions of dollars to and from BLMIS through HSBC Bank USA in New York, for the purchase and sale of securities in New York.  (¶139)  The HSBC Custodian Defendants were also aware or should have been aware of numerous indicia of fraud in the trading records of those accounts for which they were responsible, all of which reflected purported trading activity occurring in New York.  (*See, e.g.*, ¶¶195, 200, 212, 220, 233, 238, 259)

### 4.  Individual HSBC Defendants

#### a.  HSBC Holdings plc

HSBC Holdings is the parent company of the HSBC defendants.  (¶81)  As one of the "HSBC Defendants," as defined in the Amended Complaint (¶92), acts alleged as to the HSBC Defendants are alleged against HSBC Holdings.

In addition to those acts, among other things, HSBC Holdings committed relevant jurisdictional acts and became aware of the fraudulent nature of BLMIS through certain of its subdivisions.  In that regard, acting on behalf of Alternative Fund Services (a subdivision of HSBC Holdings's HSBC Securities Services), representatives of HSBC Bank plc, HSSL, and HSBC Bank USA, visited BLMIS in New York. (¶99)  Likewise, as alleged in the Amended Complaint, each HSBC Administrator Defendant and each HSBC Custodian Defendant acted on behalf of Alternative Fund Services.  *Id.*  As a result, HSBC Holdings, through Alternative Fund Services, participated in the breaches of duty committed in New York by HSBC Custodian Defendants and HSBC Administrative Defendants and had knowledge of the indicia of fraud of which these defendants were aware arising from conduct in New York.

In addition, HSBC Holdings had actual knowledge of the serious deficiencies associated with BLMIS acting as its own custodian, which it could only have been gained through direct access to BLMIS in New York.  John Gubert, an employee of HSBC Securities Services, a division within HSBC Holdings, warned in May 2005 that HSBC did not have "full control of assets" nor "realtime site [sic] of transaction flows," and that there "there was no proof of best execution . . . or even actual execution." (¶167)  Despite its acquisition of this knowledge, which cut to the heart of the Madoff fraud, HSBC Holdings took no action to halt the ongoing fraud.

### b.        HSBC Private Bank Holdings (Suisse) S.A.

As one of the "HSBC Defendants," as defined in the Amended Complaint (¶92), the acts alleged against the HSBC Defendants are alleged against HSBC Private Bank Holdings (Suisse).

In addition, among other acts, HSBC Private Bank Holdings (Suisse) marketed feeder funds that invested in BLMIS and then directed investment funds to those feeder funds, which occurred in New York. (¶90)  In those capacities, it is responsible for funneling millions of dollars into BLMIS for the purpose of perpetuating the Madoff fraud in New York. It is the parent of HSBC Private Bank (Suisse), which received $372 million in transfers, whose source was BLMIS in New York, and which constitute fraudulent proceeds.  (¶91)

### c.        HSBC Private Bank (Suisse) S.A.

As one of the "HSBC Defendants," as defined in the Amended Complaint (¶92), the acts alleged against the HSBC Defendants are alleged against HSBC Private Bank (Suisse).

In addition, through its New York-directed conduct, HSBC Private Bank (Suisse) substantially assisted the BLMIS fraud in a number of other ways.  Among other things, it marketed funds that invested in BLMIS in New York and encouraged its clients to invest in those funds on the basis of purported due diligence occurring in New York. (¶¶91, 415, 423)  It thereby funneled millions of dollars into the BLMIS fraud in New York. (*Id.*)  It received $372 million in transfers, emanating from BLMIS in New York, and which represent proceeds of the fraud. (¶91).

### d.     HSBC Bank plc

HSBC Bank plc ("HSBC Bank") engaged in extensive conduct in New York as a marketer and investor with respect to BLMIS feeder funds, and through the banking services it provided in New York, as an enabler of Madoff's fraudulent scheme.

HSBC Bank was a principal conduit of funds flowing between BLMIS and those feeder funds associated with HSBC.  To that end, beginning in late 2004, HSBC Bank began acting as

the bank for receiving redemptions and sending subscriptions for such HSBC-related funds, through its account in New York. (¶350)  In all, six of these funds received over $1.24 billion in transfers from BLMIS.  *Id.*

Through the Global Structured Fund Products ("GSFP") Group, HSBC invested its own money into BLMIS through transactions involving feeder funds, which involved extensive contacts with New York. (¶¶100, 104)  GSFP Group was managed out of New York and involved defendants HSBC Bank, HSBC Bank USA, and HSBC USA Inc.  (¶¶104-05)  The various financial transactions whereby GSFP Group invested with Madoff feeder funds were created by GSFP employees working in New York. (¶110)

In connection with those investments, either acting on its own or through the GSFP Group, HSBC Bank invested in and redeemed from a group of Madoff feeder funds known as the Rye Funds. (¶¶106, 367)  All Rye Funds had their principal place of business in New York and were managed from their Rye, New York headquarters. (¶360)  Prior to investing in the Rye Funds, GSFP Group (which included HSBC Bank) visited the Rye, New York offices of Tremont Group, which performed marketing, operations, diligence functions for the Rye Funds. (¶367)  Among those visits were ones occurring on August 31, 2005 and March 29, 2007, as a result of which HSBC Bank entered into swap transactions involving the Rye Funds.  *Id.*  Thereafter, HSBC Bank agreed to send funds to an account for Rye at the Bank of New York in New York.  *Id.*

HSBC Bank also received funds from certain of the New York-based Rye Funds, including $15.9 million, pursuant to a request made by a GSFP employee on or about December 1, 2008 (*id* ¶368), and $53 million from Rye XL Portfolio, which was received at HSBC Bank's account at HSBC Bank USA (¶371).  In total, HSBC Bank received $130 million in transfers representing fraudulent proceeds in connection with the New York-based Madoff fraud.  (¶82)

In addition to its direct financial relationships with BLMIS in New York, HSBC Bank was aware of the serious indicia of fraud surrounding BLMIS by, among other things, its retention of KPMG to review BLMIS for fraud, both in 2005 and 2007.  (¶¶169, 177)  Through its New York-based review of Madoff in 2005, which HSBC Bank directed, KPMG discovered serious risks of embezzlement, sham trading, and falsification of trade confirmations.  (¶175)  KPMG made recommendations to HSBC Bank to take corrective actions, including independently confirming BLMIS's purported trading activities (¶176), all of which were ignored. As a result of KPMG's second visit to BLMIS in 2007, which was also directed by HSBC Bank, HSBC personnel concluded that BLMIS "is a perfect structure for fraud." (¶¶178-79)  The conclusions from the second KPMG report were discussed in a July 17, 2008 conference call involving HSBC employees from New York, London, and around the world.  (¶179)  Again, no action was taken to halt the ongoing BLMIS fraud.  HSBC Bank also visited BLMIS in New York, on behalf of HSBC Holdings.  (¶99)

In addition, as a "HSBC Defendant," as defined in the Amended Complaint (¶92), the acts alleged against the HSBC Defendants are alleged against HSBC Bank.

### e.     HSBC Bank Bermuda Limited

HSBC Bank Bermuda acted as administrator and/or custodian for Alpha Prime, Thema Fund, Thema Wise, Hermes, Kingate Global, and Kingate Euro.  (¶87)  As custodian, its primary responsibility was to safeguard and verify fund assets.  (¶150) As administrator, its primary responsibility was to calculate the net asset value for each fund, as well as to oversee the day-to-day administration of the funds, including issuing and redeeming fund shares, and maintaining the books and records of those funds.  (¶¶97, 334)

As a named HSBC Custodian Defendant (¶98), the acts alleged against those defendants are alleged as to HSBC Bank Bermuda.  In sum, in derogation of industry practice, which required

that fund assets be held by an independent custodian, HSBC Bank Bermuda delegated its custodial duties to BLMIS with respect to funds invested with BLMIS in New York. (¶203)  By permitting New York-based BLMIS to serve as custodian and/or sub-custodian, HSBC Bank Bermuda facilitated the risk that BLMIS's fraudulent trading in New York was a sham.  (¶¶203-04)

Further, as a named HSBC Administrator Defendant, the acts of these defendants are applicable to HSBC Bank Bermuda.  In particular, like the other administrator defendants, HSBC Bank Bermuda provided a calculation of "net asset value" for the funds that falsely portrayed their actual condition, which meaningfully perpetuated and prolonged the Madoff fraud.  (¶¶415, 423)

HSBC Bank Bermuda also received fees whose source was BLMIS in New York for HSBC Bank Bermuda's role in perpetrating the fraud as a purported administrator and/or custodian. Along with HSSL and HITSB, HSBC Bank Bermuda received over seven million dollars for the rendering of purported administrative and custodial services in New York to various feeder funds, all of which are traceable to BLMIS in New York.  (¶¶349-52)

Finally, HSBC Bank Bermuda was aware or should have been aware of numerous indicia of fraud in the trading records for those accounts for which it was administrator and/or custodian. (*See, e.g.*, ¶¶195, 200, 212, 220, 233, 238, 259)  Those records reflected purported trading activity occurring in New York over which it exercised control and responsibility through the maintenance and administration of the books and records of those funds.

### f.      HSBC Securities Services (Bermuda) Limited

HSBC Securities Services (Bermuda) Limited ("HSSB") served as administrator to Thema Fund, Thema Wise, Hermes, and Alpha Prime.  (¶85)  As administrator, its primary responsibility was to calculate the net asset value for each fund, as well as to oversee the day-to-day administration of the funds, including issuing and redeeming fund shares, and maintaining the books and records of those funds.  (¶¶97, 334)

As a named HSBC Administrator Defendant, the acts alleged against those defendants are alleged as to HSSB.  In particular, like the other administrator defendants, HSSB provided a calculation of "net asset value" for the funds that falsely portrayed their actual condition, which meaningfully perpetuated and prolonged the Madoff fraud.  (¶¶415, 423)

HSSB was aware or should have been aware of numerous indicia of fraud in the trading records for those accounts for the which it was administrator.  (*See, e.g.*, ¶¶195, 200, 212, 220, 233, 238, 259)  Those records reflected purported trading activity occurring in New York over which it exercised control and responsibility through the maintenance and administration of the books and records of those funds.  (¶334)

As an "HSBC Defendant," as defined in the Amended Complaint (¶92), the acts alleged against the HSBC Defendants are alleged against HSSB.

### g.      HSBC Securities Services Luxembourg

HSBC Securities Services (Luxembourg) ("HSSL") served as administrator and/or sub-administrator to Lagoon, Herald, Herald (Lux), Senator, Thema Fund, Thema Wise, Alpha Prime, Hermes, and Primeo.  (¶88)  As administrator, its primary responsibility was to calculate the net asset value for each fund, as well as to oversee the day-to-day administration of the funds, including issuing and redeeming fund shares, and maintaining the books and records of those funds.  (¶¶97, 334)

HSSL served as custodian and/or sub-custodian to Lagoon, Herald, Herald (Lux), Primeo, Senator, Alpha Prime, Hermes, and Thema Fund.  (¶88)  As custodian, its primary responsibility was to safeguard and verify fund assets.  (¶150)

Because HSSL is named as a HSBC Custodian Defendant (¶98), the allegations pleaded against those defendants are alleged against HSSL. In sum, in derogation of industry practice, which required that fund assets be held by an independent custodian, HSSL delegated its custodial

duties to BLMIS with respect to funds invested with BLMIS in New York.  (¶203)  By thus permitting New York-based BLMIS to serve as custodian, HSSL enabled and facilitated the risk that BLMIS's fraudulent trading in New York was a sham.  (¶¶203-04)

Further, because HSSL is named as an HSBC Administrator Defendant, the allegations pleaded against those defendants are alleged against HSSL.  In particular, like the other administrator defendants, HSSL provided a calculation of "net asset value" for the funds for which it served as administrator that falsely portrayed their actual condition, which meaningfully perpetuated and prolonged the Madoff fraud.  (¶¶415, 423)

HSSL was also aware or should have been aware of numerous indicia of fraud in the trading records for those accounts for which it was administrator.  (*See, e.g.*, ¶¶195, 200, 212, 220, 233, 238, 259)  Those records reflected purported trading activity occurring in New York over which it exercised control and responsibility through the maintenance and administration of the books and records of those funds.

As part of its role in facilitating the Madoff fraud, HSSL visited BLMIS in New York, on behalf of HSBC Holdings.  (¶99)  HSSL also received fees whose source was BLMIS in New York as compensation for HSSL's role in perpetrating the fraud as a purported administrator and/or custodian.  Along with HSBC Bank Bermuda and HITSB, HSSL received over seven million dollars for the rendering of purported administrative and custodial services in New York to various feeder funds, all of which are directly traceable to funds distributed by BLMIS.  (¶¶349-52)

In addition, as an "HSBC Defendant," as defined in the Amended Complaint (¶92), the acts alleged against the HSBC Defendants are alleged against HSSL.

### h.    HSBC Bank (Cayman) Limited

HSBC Bank (Cayman) Limited ("HSBC Cayman") served as administrator of Primeo Fund, which was created and controlled by defendant UniCredit Bank Austria AG.  (¶¶41, 89)

Like the other administrator defendants, HSBC Cayman failed to perform accurate calculations of the net asset values for the fund for which it served as administrator, thus perpetuating and prolonging the Madoff fraud. In its role as administrator, HSBC Cayman was also aware or should have been aware of numerous indicia of fraud in the trading records of Primeo. (*See, e.g.*, ¶¶195, 200, 212, 220, 233, 238, 259) Those records reflected purported trading activity occurring in New York over which HSBC Cayman exercised control and responsibility through the maintenance and administration of the books and records of Primeo. For example, the account records for Primeo, for which HSBC Cayman was responsible as administrator, reflected that on 129 occasions, for a total of 573 days, Primeo had a negative cash balance, thus amounting to an interest-free loan from BLMIS, which HSBC Cayman knew was implausible. (¶210)

### i.     HSBC Institutional Trust Services (Bermuda) Limited

HSBC Institutional Trust Services (Bermuda) Limited ("HITSB") served as custodian for Alpha Prime, Hermes, Thema Wise, and Thema Fund. (¶86) As custodian, its primary responsibility was to safeguard and verify fund assets. (¶150)

Like the other HSBC Custodian Defendants (¶98), HITSB undertook substantial commercial activities in New York. Those activities included the critical function of directing and facilitating the transfer of billions of dollars to and from BLMIS through HSBC Bank USA in New York, such transfers being for the purchase and sale of securities in New York. (¶139) In addition, HITSB was contractually obligated to ensure proper custody of fund assets, including that Madoff possessed the customer funds in New York he claimed to have. (¶159) Like the other HSBC Custodian Defendants, HITSB failed to safeguard these New York-based assets.

HITSB also received fees whose source was BLMIS in New York as compensation for HITSB's role in perpetrating the fraud as a purported administrator and/or custodian. Along with HSBC Bank Bermuda and HSSL, HITSB received over seven million dollars for the rendering of

purported administrative and custodial services in New York to various feeder funds, all of which are directly traceable to funds distributed by BLMIS.  (¶¶349-52)

Finally, HITSB was aware or should have been aware of numerous indicia of fraud in the trading records for those accounts for which it was custodian.  (*See, e.g.*, ¶¶195, 200, 212, 220, 233, 238, 259)  Those records reflected purported trading activity occurring in New York over which it exercised control and responsibility as custodian.

C.      In the Alternative, Jurisdictional Discovery Should Be Permitted.

If the Court believes that SPV has not sufficiently alleged personal jurisdiction over any of the HSBC Defendants, then discovery should be allowed.  *See, e.g.*, *Albino v. Global Equipment USA, Ltd.*, 2017 WL 372056, at \*5 (S.D.N.Y. Jan. 26, 2017);  *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 70-71 (E.D.N.Y. 2006).

## II.      SPV's Claims Against HSBC Bank USA are Timely Asserted.

Like the claims brought against the other HSBC Defendants, SPV's claims against HSBC Bank USA were tolled by the pendency of the action brought by the BLMIS Trustee action against several HSBC defendants until its dismissal became final on June 30, 2014 when the Trustee's petition for writ of certiorari was denied by the Supreme Court.  134 S.Ct. 2895 (2014).  Because the Trustee sought to litigate similar claims to those asserted on behalf of customers like SPV-assignor OSUS, the tolling principle established in *American Pipe & Const. Co. v. Utah*, 462 U.S. 345, 354 (1983), is applicable to all of SPV's claims, including those made against HSBC Bank USA.  Therefore, because the claims asserted by SPV were tolled until June 30, 2014, the claims made against HSBC Bank USA on March 28, 2018 are timely.

## III.     SPV's Complaint Adequately States Aiding and Abetting Claims.

The HSBC Defendants' remaining assertions are addressed more fully in SPV's Main Response.  We briefly address them here, while incorporating by reference that response.

14

A.   **HSBC's Purported Due Diligence Establishes Actual Knowledge and Conscious Avoidance.**

HSBC's purported due diligence establishes those defendants' actual knowledge of at least the red flags indicating Madoff's fraud, and HSBC's failure to follow up its purported due diligence with any action to halt or limit the fraud shows, at best, "conscious avoidance," which satisfies the actual knowledge element.  *See In re Agape Litig.*, 773 F. Supp. 2d 298, 308 (E.D.N.Y. 2011); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007).

B.   **Their Investments Do Not Absolve HSBC Defendants of Complicity.**

The HSBC Defendants' own investment does not absolve them of complicity or liability. For one thing, those allegations are but a small part of these defendants' conduct, the bulk of which involves the complex infrastructure for directing huge sums of other people's money into BLMIS. Dkt. #67 ¶¶4, 16-17.  HSBC's own deposits support the inference that it hoped to profit from "investing" in the very Ponzi scheme they knowingly supported as well as through receiving fees.

C.   **HSBC Defendants' Activities Establishes Substantial Assistance.**

As more fully discussed in SPV's response to the Consolidated Brief, HSBC's activities constituted the activities SPV alleges comprise "many forms" of substantial assistance, *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 257 (S.D.N.Y. 2005), by which Defendants "affirmatively assist[ed]" and "help[ed] conceal" Madoff's fraud and "fail[ed] to act when required to do so."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 295 (2d Cir. 2006).

## CONCLUSION

For these reasons and those discussed more fully in SPV's Memorandum in Opposition to Defendants' Motion to Dismiss, which is incorporated herein by reference, the HSBC Defendants are subject to personal jurisdiction, and Defendants' motion to dismiss should be denied.

Dated: November 20, 2018.                    Respectfully submitted,

                                             */s/ Collin J. Cox*
                                             R. Paul Yetter
                                             Collin J. Cox
                                             James E. Zucker
                                             Autry W. Ross
                                             YETTER COLEMAN LLP
                                             811 Main Street, Suite 4100
                                             Houston, Texas 77002
                                             [Tel.] (713) 632-8000
                                             [Fax] (713) 632-8002

                                             Matthew C. Heerde
                                             LAW OFFICE OF MATTHEW C. HEERDE
                                             222 Broadway 19th Floor
                                             New York, New York 10038
                                             [Tel.] 347-460-3588
                                             [Fax] 347-535-3588

                                             ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that this pleading was filed electronically with the Court, and thus served simultaneously upon all counsel of record, this 20th day of November, 2018.

                                             */s/ Collin J. Cox*

16