UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| SPV OSUS LTD., | : |
| | : |
| Plaintiff, | : |
| | : |
| -against- | : |
| | : |
| HSBC HOLDINGS PLC, HSBC BANK PLC, HSBC | : |
| BANK USA, NA, HSBC USA INC., HSBC | : |
| SECURITIES SERVICES (BERMUDA) LIMITED, | : |
| HSBC INSTITUTIONAL TRUST SERVICES | : |
| (BERMUDA) LIMITED, HSBC BANK BERMUDA | : |
| LIMITED, HSBC SECURITIES SERVICES | : |
| (LUXEMBOURG) S.A., HSBC BANK (CAYMAN) | : |
| LIMITED, HSBC PRIVATE BANKING HOLDINGS | : |
| (SUISSE) S.A., HSBC PRIVATE BANK (SUISSE) | : |
| S.A., HSBC FUND SERVICES (LUXEMBOURG) | : No. 1:18-cv-03497-AJN |
| S.A., SONIA KOHN, MARIO BENBASSAT, | : |
| ALBERTO BENBASSAT, STEPHANIE | : |
| BENBASSAT, 20:20 MEDICI AG, UNICREDIT | : **PLAINTIFF SPV OSUS** |
| BANK AUSTRIA AG, BA WORLDWIDE FUND | : **LTD.'S RESPONSE TO** |
| MANAGEMENT LTD., UNICREDIT S.P.A., | : **SUPPLEMENTAL** |
| HERALD ASSET MANAGEMENT LIMITED, | : **MEMORANDUM OF LAW** |
| EUROVALEUR, INC., PIONEER ALTERNATIVE | : **OF DEFENDANTS** |
| INVESTMENT MANAGEMENT LIMITED, ALPHA | : **HERMES ASSET** |
| PRIME ASSET MANAGEMENT LTD., REGULUS | : **MANAGEMENT LIMITED,** |
| ASSET MANAGEMENT  LIMITED, CARRUBA | : **THEMA ASSET** |
| ASSET  MANAGEMENT LIMITED, TEREO TRUST | : **MANAGEMENT** |
| COMPANY LIMITED, GENEVALOR,  BENBASSAT | : **(BERMUDA) LTD., THEMA** |
| ET CIE, HERMES ASSET MANAGEMENT | : **ASSET MANAGEMENT** |
| LIMITED, THEMA ASSET MANAGEMENT | : **LIMITED, EQUUS ASSET** |
| (BERMUDA) LTD., THEMA ASSET | : **MANAGEMENT LIMITED,** |
| MANAGEMENT LIMITED, EQUUS ASSET | : **EQUUS ASSET** |
| MANAGEMENT LIMITED, EQUUS ASSET | : **MANAGEMENT** |
| MANAGEMENT PARTNERS, L.P., AURELIA FUND | : **PARTNERS, L.P., AURELIA** |
| MANAGEMENT LIMITED, INTER ASSET | : **F. MANAGEMENT LTD.,** |
| MANAGEMENT INC., T+M TRUSTEESHIP & | : **AND CAPE INVESTMENT** |
| MANAGEMENT SERVICES S.A., GTM | : **ADVISORS** |
| MANAGEMENT SERVICES CORP. N.V., AURELIA | : |
| ASSET MANAGEMENT PARTNERS, CAPE | : |
| INVESTMENT ADVISORS LIMITED and ERWIN | : |
| KOHN, | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF SPV OSUS LTD.'S RESPONSE TO
SUPPLEMENTAL MEMORANDUM OF LAW OF DEFENDANTS
HERMES ASSET MANAGEMENT LIMITED, THEMA ASSET MANAGEMENT
(BERMUDA) LTD., THEMA ASSET MANAGEMENT LIMITED, EQUUS ASSET
MANAGEMENT LIMITED, EQUUS ASSET MANAGEMENT PARTNERS, L.P.,
<u>AURELIA F. MANAGEMENT LTD., AND CAPE INVESTMENT ADVISORS</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ................................................................................................................. 1

I.   The Bermuda Defendants Are Subject to Personal Jurisdiction in This Court.................. 1

    A.   Standards for Determining Personal Jurisdiction ................................................... 1

    B.   Specific Jurisdiction Exists Over Each Bermuda Defendant.................................. 2

        1.   Management Defendants .......................................................................... 2

        2.   Beneficial Owner Defendants .................................................................. 3

        3.   Individual Bermuda Defendants .............................................................. 4

            a.   Hermes Asset Management Limited............................................ 4

            b.   Thema Asset Management (Bermuda) Ltd................................... 5

            c.   Thema Asset Management Limited .............................................. 6

            d.   Equus Asset Management Limited ............................................... 7

            e.   Equus Asset Management Partners, L.P. ...................................... 9

            f.   Aurelia Fund Management Ltd................................................... 10

            g.   Cape Investment Advisors .......................................................... 11

II.   In the Alternative, Jurisdictional Discovery Should Be Permitted. .................................. 11

CONCLUSION............................................................................................................... 12

CERTIFICATE OF SERVICE ....................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albino v. Global Equipment USA, Ltd.*,
2017 WL 372056 (S.D.N.Y. Jan. 26, 2017) ...........................................................................11

*Hau Yin To v. HSBC Holdings PLC*,
2017 WL 816136 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir.
2017) ........................................................................................................................................1

*Hollins v. U.S. Tennis Ass'n*,
469 F.Supp. 2d 67 (E.D.N.Y. 2006) ......................................................................................11

Plaintiff SPV OSUS Ltd., by its undersigned attorneys, submits this response to the supplemental memorandum of law filed by defendants Hermes Asset Management Limited, Thema Asset Management (Bermuda) Ltd., Thema Asset Management Limited, Equus Asset Management Limited, Equus Asset Management Partners, L.P., Aurelia F. Management Ltd. and Cape Investment Advisors (collectively the "Bermuda Defendants").

## PRELIMINARY STATEMENT

The supplemental memorandum of law of the Bermuda Defendants fails to provide any additional ground for dismissal of SPV's claims. This response addresses personal jurisdiction allegations as to these defendants. These defendants' additional arguments for dismissal are addressed in SPV's Memorandum of Law in Opposition to Defendants' Motion to Dismiss responding to the Consolidated Brief ("Main Response"), which is incorporated in its entirety herein by reference. The legal standard for a showing of specific personal jurisdiction is also discussed in SPV's Main Response.

## ARGUMENT

I.      **The Bermuda Defendants Are Subject to Personal Jurisdiction in This Court.**

       A.      **Standards for Determining Personal Jurisdiction**

As an initial matter, as discussed more fully in SPV's Main Response, Defendants' arguments regarding what they term "group pleading," relate to a matter of style rather than substance. When a given jurisdictional allegation is made with reference to one of the defined terms, it must be read as alleging that specific fact as against each individual Defendant included within the defined term. *See, e.g.*, *Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136, at *1-*2 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 F. App'x 66 (2d Cir. 2017) (considering allegations pleaded against various HSBC entities included within each of multiple defined terms).

Personal jurisdiction over the Bermuda Defendants is proper in New York due to their extensive contacts with BLMIS, including through accounts maintained at BLMIS in New York for which they were responsible.

**B.   Specific Jurisdiction Exists Over Each Bermuda Defendant.**

Hermes Asset Management Limited, Thema Asset Management (Bermuda) Ltd., Thema Asset Management Limited, Equus Asset Management Limited, Equus Asset Management Partners, L.P., Aurelia Fund Management Ltd., and Cape Investment Advisors (collectively, the "Bermuda Defendants") were key participants in the New York-based BLMIS fraud.

Each of the Bermuda Defendants was either directly or indirectly owned and/or controlled by members of the Benbassat family (Dkt. #67 ¶¶116-19), who, beginning in 1992, set up a variety of feeder funds for the purpose of funneling investments to BLMIS. *Id.* ¶5. The Bermuda Defendants, along with the HSBC Defendants, were the principal service providers to these funds. The members of the Benbassat family regularly traveled to New York to meet with Madoff. *Id.* ¶¶116-18. The Bermuda Defendants raked in millions in illicit fees from BLMIS transactions performed in New York, all the while possessing detailed knowledge of the ongoing fraud. *Id.* ¶¶68-73, 79, 250, 352. Given their pervasive contacts with New York, personal jurisdiction over the Bermuda Defendants is fully warranted

**1.   Management Defendants**

The Amended Complaint makes specific allegations against Hermes Asset Management Limited, Thema Asset Management (Bermuda) Ltd., Thema Asset Management Limited, Equus Asset Management Limited, Equus Asset Management Partners, L.P., and Aurelia Fund Management Ltd. in their capacities as Management Defendants, whereby they undertook substantial commercial activities in New York. *Id.* ¶74.

As alleged in the Amended Complaint, the Management Defendants had the duty to implement and oversee investment strategies on behalf of the funds they managed. *Id.* ¶147. To that end, they directed the transfer of funds to and from BLMIS in New York and derived significant revenue from the sale and purchases of securities in New York. *Id.* ¶129. They also communicated regularly with persons in New York regarding BLMIS and also communicated with BLMIS on numerous occasions. *Id.* ¶130. The Management Defendants also delivered to BLMIS's headquarters in New York account opening documents, including agreements, relating to BLMIS accounts maintained in New York. *Id.* ¶131.

### 2.     Beneficial Owner Defendants

The Amended Complaint makes specific allegations against Equus Asset Management Limited, Equus Asset Management Partners, L.P., Aurelia Fund Management Ltd., and Cape Investment Advisors in their capacities as Beneficial Owner Defendants, whereby they undertook substantial commercial activities in New York.

As alleged in the Amended Complaint, the Beneficial Owner Defendants derived significant revenue from New York for their role in the BLMIS fraud. *Id.* ¶133. They derived that revenue by, among other means, providing assistance in directing funds into BLMIS's account at JPMorgan Chase in New York, for the purpose of investing with BLMIS in New York. *Id.* ¶135. In that regard, the Beneficial Owner Defendants knew that the more money the feeder funds took in, the more the beneficial owners received in fees. That gave the Beneficial Owner Defendants a powerful incentive not to delve into the serious indicia of fraud surrounding BLMIS, such as the implausibly low fees BLMIS charged the feeder funds in New York. *Id.* ¶251.

In sum, motivated by the desire to make fees, the Beneficial Owner Defendants funneled billions of dollars into BLMIS. *Id.* ¶¶416, 424. They thereby committed various tortious acts, both inside and outside New York, all of which caused serious injury in New York. *Id.* ¶133.

### 3.     Individual Bermuda Defendants

#### a.     Hermes Asset Management Limited

Hermes Asset Management Limited ("Hermes Management") served as investment manager of feeder funds Hermes and Lagoon Trust. *Id.* ¶68. It conducted substantial commercial activities in New York and otherwise had significant contacts with New York.

First, as one of the "Management Defendants," as defined in the Amended Complaint (*id.* ¶74), the acts alleged as to the Management Defendants are alleged against Hermes Management.

Second, Hermes Management was owned and controlled by the Benbassat family whose members regularly visited Madoff in New York. *Id.* ¶¶68, 116-18. As a result, Hermes Management was aware, through the Benbassats, about key aspects of the fraud Madoff was perpetrating, including for example, that Madoff was the one making investment decisions, while acting as both investment advisor and custodian. *Id.* ¶153.

Third, as a result of BLMIS transactions that were transacted in New York, which were then processed through New York banks, Hermes Management received $79 million in fees and/or distributions, representing proceeds of the New-York based fraud. *Id.* ¶¶68, 250, 351-52.

Fourth, as a result of trading engaged in by BLMIS in New York on behalf of Hermes Management, it became aware or should have been aware of serious indicia fraud in account records for which it was responsible. *See, e.g.*, *id.* ¶¶195, 200, 212, 220, 233, 238, 259. Among other indicia of fraud, these records showed trades outside the daily pricing range (*id.* ¶198); negative cash balances on behalf of customers which amounted to interest-free loans (*id.* ¶231); sales of stocks not accompanied by any hedging adjustment (*id.* ¶238); and option transactions which did not settle on the business day following the transaction, per industry custom. (*id.* ¶259).

Fifth, through its director David Smith, Hermes Management attempted to obstruct the 2005 KMPG review, which occurred in New York. *Id.* ¶¶123, 172. In particular, Smith told

HSBC, who engaged KPMG for purposes of the review, that "we expect your team will display full deference to the people they meet." *Id.* ¶¶169, 172. Smith also warned that due diligence on BLMIS would risk angering Madoff and could endanger the ability of feeder funds to continue to make investments in BLMIS. *Id.* ¶294. In attempting to obstruct the KPMG review, Smith was aware that Madoff was not a registered investment adviser, that Madoff declined to work with custodians; and that experts could not replicate his returns. *Id.* ¶¶294-95. As a result of Smith's knowledge, Hermes Management was likewise aware that BLMIS was a fraud, even as it continued to extract fees and pour more investment money into the scheme.

### b.    Thema Asset Management (Bermuda) Ltd.

Thema Asset Management (Bermuda) Ltd. ("Thema Management Bermuda") served as investment manager of feeder fund Thema Fund. *Id.* ¶69. It conducted substantial commercial activities in New York and otherwise had significant contacts with New York.

First, as a "Management Defendant," as defined in the Amended Complaint (*id.* ¶74), the acts alleged as to the Management Defendants are alleged against Thema Management Bermuda.

Second, Thema Management Bermuda was owned and controlled by the Benbassat family whose members regularly visited Madoff in New York. *Id.* ¶¶68, 116-18. As a result, Thema Management Bermuda was aware, through the Benbassats, about key aspects of the fraud Madoff was perpetrating, including for example, that Madoff was the one making investment decisions, while acting as both investment advisor and custodian. *Id.* ¶153.

Third, as a result of BLMIS transactions that were transacted in New York, which were then processed through New York banks, Thema Management Bermuda received $10 million in fees and/or distributions, representing proceeds of the New-York fraud. *Id.* ¶¶68, 250, 351-52.

Fourth, as a result of trading engaged in by BLMIS in New York on behalf of Thema Management Bermuda, it became aware or should have been aware of serious indicia fraud in

account records for which it was responsible. *See, e.g.*, *id.* ¶¶195, 200, 212, 220, 233, 238, 259. Among other indicia of fraud, these records showed trades outside the daily pricing range (*id.* ¶198); negative cash balances on behalf of customers which amounted to interest-free loans (*id.* ¶231); sales of stocks not accompanied by any hedging adjustment (*id.* ¶238); and option transactions which did not settle on the business day following the transaction, per industry custom (*id.* ¶259).

Fifth, through its director David Smith, Thema Management Bermuda attempted to obstruct the 2005 KMPG review, which occurred in New York. *Id.* ¶¶123, 172. In particular, Smith told HSBC, who engaged KPMG for purposes of the review, that "we expect your team will display full deference to the people they meet." *Id.* ¶¶169, 172. Smith also warned that due diligence on BLMIS would risk angering Madoff and could endanger the ability of feeder funds to continue to make investments in BLMIS. *Id.* ¶294. In attempting to obstruct the KPMG review, Smith was aware that Madoff was not a registered investment adviser, that Madoff declined to work with custodians; and that experts could not replicate his returns. *Id.* ¶¶294-95. As a result of Smith's knowledge, Thema Management Bermuda was likewise aware that BLMIS was a fraud, even as it continued to extract fees and pour more investment money into the scheme.

### c.   Thema Asset Management Limited

Thema Asset Management Limited ("Thema Management BVI") served as investment manager and global distributor for Thema International. *Id.* ¶70. It conducted substantial commercial activities in New York and otherwise had significant contacts with New York.

First as a "Management Defendant," as defined in the Amended Complaint (*id.* ¶74), the acts alleged as to the Management Defendants are alleged against Thema Management BVI.

Second, Thema Management BVI was owned and controlled by the Benbassat family whose members regularly visited Madoff in New York. *Id.* ¶¶70, 116-18. As a result, Thema

Management BVI was aware, through the Benbassats, about key aspects of the fraud Madoff was perpetrating, including for example, that Madoff was the one making investment decisions, while acting as both investment advisor and custodian. *Id.* ¶153.

Third, as a result of BLMIS transactions that were transacted in New York, which were then processed through New York banks, Thema Management BVI received $105 million in fees and/or distributions, representing proceeds of the New York-based fraud. *Id.* ¶¶70, 250, 351-52.

Fourth, as a result of trading engaged in by BLMIS in New York on behalf of Thema Management BVI, it became aware or should have been aware of serious indicia fraud in account records for which it was responsible. *See, e.g.*, *id.* ¶¶195, 200, 212, 220, 233, 238, 259. Among other indicia of fraud, these records showed trades outside the daily pricing range (*id.* ¶198); negative cash balances on behalf of customers which amounted to interest-free loans (*id.* ¶231); sales of stocks not accompanied by any hedging adjustment (*id.* ¶238); and option transactions which did not settle on the business day following the transaction, per industry custom (*id.* ¶259).

### d.    Equus Asset Management Limited

Equus Asset Management Limited ("Equus") served as investment manager of Thema Fund. *Id.* ¶71. It also held ownership interests in Hermes Management and Thema Management BVI. *Id.* It conducted substantial commercial activities in New York and otherwise had significant contacts with New York.

First, as a "Management Defendant," as defined in the Amended Complaint (*id.* ¶74), the acts alleged as to the Management Defendants are alleged against Equus.

Second, as a "Beneficial Owner Defendant," as defined in the Amended Complaint id. ¶80), the acts alleged as to the Beneficial Owner Defendants are alleged against Equus.

Third, Equus was owned and controlled by the Benbassat family whose members regularly visited Madoff in New York. *Id.* ¶¶71, 116-18. As a result, Equus was aware, through the

7

Benbassats, about key aspects of the fraud Madoff was perpetrating, including for example, that Madoff was the one making investment decisions, while acting as both investment advisor and custodian. *Id.* ¶153.

Fourth, as a result of BLMIS transactions that were transacted in New York, which were then processed through New York banks, Equus received $1.76 million in fees and/or distributions, representing proceeds of the New-York based fraud. *Id.* ¶¶71, 250, 351-52.

Fifth, as a result of trading engaged in by BLMIS in New York on behalf of Equus, it became aware or should have been aware of serious indicia fraud in account records for which it was responsible. *See, e.g.*, *id.* ¶¶195, 200, 212, 220, 233, 238, 259. Among other indicia of fraud, these records showed trades outside the daily pricing range (*id.* ¶198); negative cash balances on behalf of customers which amounted to interest-free loans (*id.* ¶231); sales of stocks not accompanied by any hedging adjustment (*id.* ¶238); and option transactions which did not settle on the business day following the transaction, per industry custom (*id.* ¶259).

Sixth, through its President and director David Smith, Equus attempted to obstruct the 2005 KMPG review, which occurred in New York. *Id.* ¶¶123, 172. In particular, Smith told HSBC, who engaged KPMG for purposes of the review, that "we expect your team will display full deference to the people they meet." *Id.* ¶¶169, 172. Smith also warned that due diligence on BLMIS would risk angering Madoff and could endanger the ability of feeder funds to continue to make investments in BLMIS. *Id.* ¶294. In attempting to obstruct the KPMG review, Smith was aware that Madoff was not a registered investment adviser, that Madoff declined to work with custodians; and that experts could not replicate his returns. *Id.* ¶¶294-95. As a result of Smith's knowledge, Equus was likewise aware that BLMIS was a fraud, even as it continued to extract fees and pour more investment money into the scheme.

### e.   Equus Asset Management Partners, L.P.

Equus Asset Management Partners, L.P. ("Equus Partners") owned interests in Hermes Management and Thema Management BVI by virtue of its ownership interest in Equus. *Id.* ¶72. It also served as investment manager of Hermes and Lagoon Trust. *Id.* It conducted substantial commercial activities in New York and otherwise had significant contacts with New York.

First, as a "Management Defendant," as defined in the Amended Complaint (*id.* ¶74), the acts alleged as to the Management Defendants are alleged against Equus Partners.

Second, as a "Beneficial Owner Defendant," as defined in the Amended Complaint (*id.* ¶80), the acts alleged as to the Beneficial Owner Defendants are alleged against Equus Partners.

Third, Equus Partners was owned and controlled by the Benbassat family whose members regularly visited Madoff in New York. *Id.* ¶¶72, 116-18. As a result, Equus Partners was aware, through the Benbassats, about key aspects of the fraud Madoff was perpetrating, including for example, that Madoff was the one making investment decisions, while acting as both investment advisor and custodian. *Id.* ¶153.

Fourth, as a result of trading engaged in by BLMIS in New York on behalf of Equus Partners, it became aware or should have been aware of serious indicia of fraud in account records for which it was responsible. *See, e.g.*, *id.* ¶¶195, 200, 212, 220, 233, 238, 259. Among other indicia of fraud, these records showed trades outside the daily pricing range (*id.* ¶198); negative cash balances on behalf of customers which amounted to interest-free loans (*id.* ¶231); sales of stocks not accompanied by any hedging adjustment (*id.* ¶238); and option transactions which did not settle on the business day following the transaction, per industry custom (*id.* ¶259).

Sixth, through its general partner David Smith, Equus attempted to obstruct the 2005 KMPG review, which occurred in New York. *Id.* ¶¶123, 172. In particular, Smith told HSBC, which engaged KPMG for purposes of the review, that "we expect your team will display full

deference to the people they meet." *Id.* ¶¶169, 172.  Smith also warned that due diligence on BLMIS would risk angering Madoff and could endanger the ability of feeder funds to continue to make investments in BLMIS.  *Id.* ¶294.  In attempting to obstruct the KPMG review, Smith was aware that Madoff was not a registered investment adviser, that Madoff declined to work with custodians; and that experts could not replicate his returns.  *Id.* ¶¶294-95.  As a result of Smith's knowledge, Equus Partners was likewise aware that BLMIS was a fraud, even as it continued to extract fees and pour more investment money into the scheme.

### f.    Aurelia Fund Management Ltd.

Aurelia Fund Management Ltd. ("Aurelia") held an ownership interest in Hermes Management and was the investment advisor of Lagoon Trust.  *Id.* ¶73. It conducted substantial commercial activities in New York and otherwise had significant contacts with New York.

First, as a "Management Defendant," as defined in the Amended Complaint (*id.* ¶74), the acts alleged as to the Management Defendants are alleged against Aurelia.

Second, as a "Beneficial Owner Defendant," as defined in the Amended Complaint (*id.* ¶80), the acts alleged as to the Beneficial Owner Defendants are alleged against Aurelia.

Third, as a result of trading engaged in by BLMIS in New York on behalf of Aurelia, it became aware or should have been aware of serious indicia fraud in account records for which it was responsible.  *See, e.g.*, *id.* ¶¶195, 200, 212, 220, 233, 238, 259.  Among other indicia of fraud, these records showed trades outside the daily pricing range (*id.* ¶198); negative cash balances on behalf of customers which amounted to interest-free loans (*id.* ¶231); sales of stocks not accompanied by any hedging adjustment (*id.* ¶238); and option transactions which did not settle on the business day following the transaction, per industry custom (*id.* ¶259).

### g.   Cape Investment Advisors

Cape Investment Advisors ("Cape Investment") held an ownership interest in Thema Management Bermuda, in which capacity it received fees and/or distributions representing proceeds from the BLMIS fraud. *Id.* ¶79. It conducted substantial commercial activities in New York and otherwise had significant contacts with New York.

First, as a "Beneficial Owner Defendant," as defined in the Amended Complaint (*id.* ¶80), the acts alleged as to the Beneficial Owner Defendants are alleged against Cape Investment.

Second, as a result of trading engaged in by BLMIS in New York on behalf of Cape Investment, it became aware or should have been aware of serious indicia fraud in account records for which it was responsible. *See, e.g.*, *id.* ¶¶195, 200, 212, 220, 233, 238, 259. Among other indicia of fraud, these records showed trades outside the daily pricing range (*id.* ¶198); negative cash balances on behalf of customers which amounted to interest-free loans (*id.* ¶231); sales of stocks not accompanied by any hedging adjustment (*id.* ¶238); and option transactions which did not settle on the business day following the transaction, per industry custom (*id.* ¶259).

## II.   In the Alternative, Jurisdictional Discovery Should Be Permitted.

If the Court believes that SPV has not sufficiently alleged personal jurisdiction over any of the Bermuda Defendants, then discovery should be allowed. Where a plaintiff has made a "sufficient start" towards a *prima facie* case establishing personal jurisdiction, courts in this circuit have permitted jurisdictional discovery. *See Hollins v. U.S. Tennis Ass'n*, 469 F.Supp. 2d 67, 70-71 (E.D.N.Y. 2006). Discovery is particularly appropriate where facts necessary to establish personal jurisdiction lie in the control of the defendants, as is the case here, where the Bermuda Defendants are the principal source of the information concerning their dealings with the New York-based Madoff. *See Albino v. Global Equipment USA, Ltd.*, 2017 WL 372056, at *5 (S.D.N.Y. Jan. 26, 2017).

**CONCLUSION**

For these reasons and those discussed more fully in SPV's Main Response to Defendants'
Motion to Dismiss, which is incorporated in its entirety herein by reference, defendants Hermes
Asset Management Limited, Thema Asset Management (Bermuda) Ltd., Thema Asset
Management Limited, Equus Asset Management Limited, Equus Asset Management Partners,
L.P., Aurelia F. Management Ltd. and Cape Investment Advisors are subject to personal
jurisdiction in this forum, and their motion to dismiss should be denied.

Dated: November 20, 2018.                    Respectfully submitted,

                                             */s/ Collin J. Cox*
                                             R. Paul Yetter
                                             Collin J. Cox
                                             James E. Zucker
                                             Autry W. Ross
                                             YETTER COLEMAN LLP
                                             811 Main Street, Suite 4100
                                             Houston, Texas 77002
                                             [Tel.] (713) 632-8000
                                             [Fax] (713) 632-8002

                                             Matthew C. Heerde
                                             LAW OFFICE OF MATTHEW C. HEERDE
                                             222 Broadway 19th Floor
                                             New York, New York 10038
                                             [Tel.] 347-460-3588
                                             [Fax] 347-535-3588

                                             ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that this pleading was filed electronically with the Court, and thus served simultaneously upon all counsel of record, this 20th day of November, 2018.

                                             */s/ Collin J. Cox*

13