UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

| | |
|---|---|
| SPV OSUS LTD., | : |
| | : |
|        **Plaintiff,** | : |
| | : Case No. 18-3497 (AJN) |
|     **v.** | : |
| | : |
| HSBC HOLDINGS PLC, *et al.* | : |
| | : |
|        **Defendants.** | : |

**SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THE MOTION TO DISMISS BY ALPHA PRIME ASSET MANAGEMENT LTD.,
REGULUS ASSET MANAGEMENT LIMITED, CARRUBA ASSET MANAGEMENT
LIMITED, AND TEREO TRUST COMPANY LIMITED**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.    The Amended Complaint Pleads No Facts to Establish Minimum Contacts Specific to Movants ................................................................................................................................. 2
    II.   Personal Jurisdiction, like Guilt, Cannot Be Alleged by Association ................................ 5
    III.  Absent Proximate Causation, Specific Jurisdiction Cannot be Imposed ......................... 8

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**

*Cenage Learning, Inc. v. Buckeye Books*, 531 F. Supp. 2d 596, 599 (S.D.N.Y. 2008)) ................ 6

*Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998) ........................................................................ 8

*Guiliano v. Barch*, 2017 U.S. Dist. LEXIS 50396 (S.D.N.Y. 2017) ......................................... 5, 8

*Hau Yin To v. HSBC Holdings PLC*, 2017 U.S. Dist. LEXIS 28931, 2017 WL 816136 (S.D.N.Y. 2017) .............................................................................................................................................. 5

*In re Complaint of Kreta Shipping, S.A.*, 1998 U.S. Dist. LEXIS 5081 (S.D.N.Y. 1998) ............. 8

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 551-552 (S.D.N.Y. 2001) .......... 7

*Sargent v. Budget Rent-A-Car Corp.*, 1996 U.S. Dist, LEXIS 10378 (S.D.N.Y. 1996) ................ 8

*SPV OSUS Ltd. V. UBS AG,* 882 F.3d 333 (2d Cir. 2018) ..................................................... 2, 5, 8

*Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) ............................................................................ 7

Alpha Prime Asset Management Ltd. ("APAM"), Regulus Asset Management Limited ("Regulus"), Carruba Asset Management Limited ("Carruba"), and Tereo Trust Company Limited ("Tereo") (collectively, "Movants"), by their undersigned counsel, submit this reply memorandum of law in further support of Movants' Memorandum of Law in Support of the Motion to Dismiss ("Movants' Suppl. Br.") and Defendants' Memorandum of Law in Support of Their Motion to Dismiss (the "Consolidated Brief"), in order to address lack of unique allegations made against them in the Amended Complaint.[1]

## PRELIMINARY STATEMENT

Plaintiff SPV OSUS ("OSUS") doubles down on its inadequate Amended Complaint. When Movants called the Court's attention to OSUS' group pleading, OSUS waived its collective hand and describes it as "stylistic". However, this trivial response fails to explain how OSUS' vague allegations ascribed to such a diverse group of defendants could ever satisfy the pleading requirements in the Federal Rules of Civil Procedure. Almost as if to prove Movants' point, OSUS in its opposition, points to those very same group pleading allegations as if the lack of specificity will somehow justify jurisdiction over foreign entities that have absolutely no presence in the United States much less in NY. Indeed, in a flailing attempt at what could only be described as "personal jurisdiction by association", OSUS attempts to attribute actions of entities not named in this action. This too must fail. Given this stunning lack of specificity, the Amended Complaint must be dismissed for want of personal jurisdiction. Finally, here, as in *SPV OSUS Ltd. V. UBS AG,* 882 F.3d 333 (2d Cir. 2018) there are no allegations in the Amended Complaint that OSUS relied on the Movants' contacts with either Alpha Prime Fund or Senator Fund when OSUS decided to invest and/or maintain its investment with BLMIS.

---

[1] The Movants incorporate by reference all applicable arguments made in the Consolidated Brief and in the declaration and submitted therewith. All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Consolidated Brief.

1

**ARGUMENT**

I. **The Amended Complaint Pleads No Facts to Establish Minimum Contacts Specific to Movants**

In response to criticism directed at its reliance on undifferentiated group pleading, Plaintiff merely asserts that the criticism "relates to a matter of style rather than substance." Opposition at 2. According to Plaintiff, the "substance" that should be controlling is that "most" of the Defendants "engaged in similar types of conduct" and it would be pointless to repeat the same allegations specifically as to each individual Defendant, where group pleading suffices. *Id*. at 3.

Plaintiff's response is wholly inadequate. In fact, Movants are artificially gerrymandered into a group Plaintiff artificially labels "Management Defendants" that, while convenient for Plaintiff's pleading purposes, does not even pretend to reflect any actual connections among its elements in real life. There are no allegations that these Management Defendants coordinated their efforts, no allegations that they communicated with each other, or even that they knew of each other's existence. The time period encompassed by the Amended Complaint is more than twenty years. Some of these Management Defendants are alleged to have become involved with BLMIS from the early 1990's, while others, such as Movants, are alleged to have become involved after 2004, or in the case of Movants Regulus and Carruba, after 2006, or in the case of Movant Tereo, no date whatsoever is even alleged.

Because there are no allegations of communications among Movants and the other Management Defendants, nor allegations of knowledge of each other's activities, there is no possible inference that the Movants somehow benefitted from the actions of other Management Defendants. There is no theory of liability that could possibility tie the Movants' independent activity that commenced in 2004 with the independent activities of other Management Defendants who were involved with BLMIS at much earlier dates. Indeed Movants and the remaining

2

Management Defendants are alleged to be no more than strangers to each other. Yet, the Amended Complaint defines them as one group.

As for engaging in "similar types of conduct" the allegation is completely vague. The label "Management Defendants" is applied by the Amended Complaint to include "financial institutions, hedge funds, investment advisors, managers, and/or promoters."  Amended Complaint, ¶ 13. Do all those kinds of entities do the same thing? Of course, none of the functions of any of these categories is provided. Is a "promoter" the same thing as a "financial institution"? Is the "conduct" of "hedge fund" and a "investment advisor" likely to be so similar in real life that separate allegations would not implicate "substance" but only "style."?

This mashup of types of businesses creates strange mysteries for parties who might be compelled to answer its allegations.  For instance, when the Amended Complaint states that "all of the Management Defendants routinely directed the transfer of funds to…BLMIS" does that mean physically sent funds to BLMIS—as a financial institution might do—or does it mean advise that investments be made in BLMIS—as a promoter might do?  Because there is literally not a word in the entire Amended Complaint as to what Movants are specifically alleged to have done vis a vis BLMIS, there is no way to know the actual allegations against Movants in this regard. Movants should not be the position where they must guess whether allegations against "Management Defendants" may or may not be allegations being alleged against them.

Other than "directing" funds to BLMIS, personal jurisdiction is alleged against the Movants—again, non-specially, as a group pleading, and entirely "upon information and belief"— for "communicating regularly with persons in New York regarding BLMIS and their agents communicated with BLMIS on multiple occasions" and "certain Management Defendants delivered to BLMIS headquarters in New York account opening documents [.]"  This is generic

3

boiler-plate jurisdictional pleading at its worst.  There is not a word provided as to the substance of these alleged communications, their frequency, why they were made, who conducted them, when, nor the identity of these alleged "agents."

There is also not a word as to whether these "communications" were live meetings of some duration in New York, or six-word emails that were sent from outside the United States. There is also no hint as to whether Movants should consider themselves among the "certain Management Defendants [who] delivered to BLMIS headquarters in New York account opening documents." As to the "delivery" of these "account opening documents" the Plaintiff's allegations are again entirely vague.  What were these documents?  Were they extensive and purposely drafted by the defendants?  Were they delivered in person to New York?  Or were they standard forms filled in quickly and simply mailed or emailed to New York from outside the United States?

Answering all these questions is essential because these allegations are the sum and substance of the "contacts" by which personal jurisdiction is sought to be exercised over the Movants to answer this lawsuit. The Court must weigh the quality of these jurisdictional contacts, because "[t]he defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).  The Second Circuit Court of Appeals has already held, upon almost identical facts, that "a handful of communications and transfers of funds" to BLMIS were "insufficient to allow the exercise of specific jurisdiction[.]" *SPV Osus, Ltd.*, 882 F.3d at 345. Here, are even a handful of communications alleged, or more, or less?  The frequency is alleged as "regularly"?  What does that mean? And why would documents to open a BLMIS account for a single Feeder Fund be sent "regularly"? In any event, "'communications with and payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not project a defendant into the state sufficiently to confer

4

specific jurisdiction' over foreign defendants." *Id*. (*quoting Hau Yin To v. HSBC Holdings PLC*, 2017 U.S. Dist. LEXIS 28931, 2017 WL 816136 (S.D.N.Y. 2017)).

Of course, answers to these essential mysteries would, in turn, vary by Management Defendant, and vary widely, given the fact some are alleged to have initiated contacts with BLMIS in the early 1990's and others as late as 2006. Yet, not only are the essential jurisdictional facts not alleged, even the boilerplate allegations that utilize terms like "regularly" are applied without differentiation across the mass of more than two dozen Management Defendants.

"Lumping all the 'defendants' together for purposes of alleging connections to New York is…patently insufficient." *Guiliano v. Barch*, 2017 U.S. Dist. LEXIS 50396 (S.D.N.Y. 2017) at *35. "[W]hen defendants are 'separate entities and are presumptively entitled to have independent existence' a plaintiff must establish a basis for subjecting each of them individually to the jurisdiction of the court." *Id*. (*quoting Cenage Learning, Inc. v. Buckeye Books*, 531 F. Supp. 2d 596, 599 (S.D.N.Y. 2008).

On this second try to plead personal jurisdiction adequately, the Amended Complaint fails once again to provide anything by way of jurisdictional facts sufficient to judge the quality of those contacts and does no more than "lump together" boiler plate allegations against a score of undifferentiated, unrelated defendants that the Amended Complaint itself admits had entirely separate experiences with BLMIS and over a widely various number of years.

**II.     Personal Jurisdiction, like Guilt, Cannot Be Alleged by Association**

Because Plaintiff's Amended Complaint appropriates the pleading filed in United States Bankruptcy Court by the Bankruptcy Trustee, the bulk of its allegations are against individuals and entities who are not even defendants in this action, even though they were the principal defendants against whom the Bankruptcy Trustee sought relief. *See, generally*, Movants Suppl. Br. at 2-5. Accordingly, justified presumably as "background", the timeframe of the Amended

5

Complaint begins "in the 1980's" and runs until Madoff's arrest in December 2008. *See*, Amended Complaint, ¶¶ 5-40.  Literally thousands of words in the Amended Complaint describe the activities of the Feeder Funds (the Bankruptcy Trustee's principal targets) and the various individuals who are alleged to control the Feeder Funds, none of whom are being sued by Plaintiff, and far fewer words by comparison are dedicated to the actual targets of the lawsuit, such as the Management Defendants.

To the extent Plaintiff can justify recycling and focusing the Bankruptcy Trustee's allegations against non-defendants here, Plaintiff asserts the concept of the "infrastructure" that "substantially assisted Madoff's fraud". Opposition at 18.  By this device, Plaintiff seeks to knit together non-defendant individuals, non-defendant Feeder Funds, and Management Defendants into some convenient but imprecisely-defined whole.  This "infrastructure', whatever it means legally, is not even pretended by Plaintiff to have been a conspiracy. Plaintiff realizes it has no basis from which to allege that these entities might have conspired together, for Plaintiff even lacks a basis to assert that all these entities even knew of each other's existence.

Plaintiff's "infrastructure" allegation  is problematic chronologically in the case of the Movants. That is especially true as to personal jurisdiction, for however far back in time Plaintiff wishes to begin the narrative of the illicit "infrastructure" the Movants cannot be alleged to have relevant contacts for specific jurisdiction purposes prior to the time they are alleged to have committed acts related to Plaintiff's claims.  The law requires a nexus between the claims and the territorial contacts. *See*, *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) ("The defendant's suit-related conduct must create a substantial connection with the forum State."); *see also, J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 551-552 (S.D.N.Y. 2001) (holding that there is no jurisdiction because defendants contacts with New York in connection with an Asset

6

Agreement were irrelevant to a claim arising out of a Fee Agreement). The Amended Complaint's own allegations assert that Movant APAM served as Alpha Prime's investment manager "from June 1, 2003 through December 2008." Amended Complaint, ¶ 352. While the Amended Complaint does not provide a date for the iniation of Movants Regulus and Caruba's retention by Senator Fund, it does reflect that Senator Fund was not created until September 2006. *Id.* at ¶ 273. As to Movant Tereo, the only involvement alleged against it is that Tereo "wholly owns" APAM. Regulus and Caruba. *Id.* at ¶ 273. Accordingly, Tereo's involvement is not alleged until June 2003, when APAM is alleged to have been retained by Alpha Prime. As a result, the long narrative provided by the Amended Complaint tracing back to the 1980's is irrelevant to Plaintiff's assertion of personal jurisdiction over Movants. What remains of relevant allegations, such as they are, consist of the boilerplate group allegations discussed above.

The "infrastructure" faux-conspiracy device fails not just as a matter of fact, as alleged upon the Amended Complaint's own facts, but as a matter of law. According to the Amended Complaint, the Movants served as "investment managers" paid fees for their services by, respectively, Alpha Prime Fund or Senator Fund. Amended Complaint, ¶¶63-66. In other words, Movants were agents of the two funds, who functioned as their principals and retained their services. Whatever the Amended Complaint alleges as to the failure of the Movants to monitor BLMIS effectively or justifiably earn their fees, the Amended Complaint (correctly) alleges them to have served as agents. "While the acts of the agent may be attributed to the principal for jurisdictional purposes, the converse is not true, a principal's conduct may not supply the jurisdictional basis for an agent." *In re Complaint of Kreta Shipping, S.A.*, 1998 U.S. Dist. LEXIS 5081 (S.D.N.Y. 1998) at **26-27; *see also*, *Sargent v. Budget Rent-A-Car Corp.*, 1996 U.S. Dist, LEXIS 10378 (S.D.N.Y. 1996) at *3 (holding acts of a principal in forum cannot be imputed "to

7

a foreign agent to confer jurisdiction over the agent."). Therefore, whatever the Amended Complaint may allege as to jurisdictional contacts for Alpha Prime, Senator Fund, or the alleged principals of those funds, is irrelevant in a determination of whether specific jurisdiction can be imputed to Movants.

### III. Absent Proximate Causation, Specific Jurisdiction Cannot be Imposed

"Where the defendant has had only limited contacts with the state…he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts." *SPV Osus, Ltd.*, 882 F.3d at 344 (*quoting Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998)). In *SPV Osus*, the Second Circuit found no personal jurisdiction could be imputed to UBS because of OSUS's failure to show proximate causation. The Court held

> Missing from the complaint is any allegation that OSUS relied on UBS's contacts with the feeder funds when OSUS decided to invest directly with BLMIS. Nor are there any allegations that OSUS based its decision to invest with BLMIS on the fact that the UBS defendants helped create and service the feeder funds. Indeed, OSUS began investing in BLMIS in 1997, and the feeder funds were not created until 2003 (Groupement) and 2004 (Luxalpha). *Spv Osus Ltd.,* 882 F.3d at 344-345.

In its Opposition, Plaintiff asserts, "Defendants' attempt to rely on the proximate causation holding in *SPV OSUS Ltd. v. UBS AG*, 882 F,3d 333 (2d Cir. 2018) is unavailing. This litigation is a different case presenting different facts alleged against different Defendants. The motion to dismiss by Defendants here must be determined based on SPV's complaint and allegations (and any materials supporting them) in *this* litigation." Opposition at 23 [emphasis in original].

As to Movants, this objection is nonsense. In *this* litigation, "in January 1997, OSUS began investing in BLMIS, and OSUS made additional deposits throughout 1997, totaling $352 million. Compl. ¶269. Over the course of the following five years…OSUS retained its investment in BLMIS and additionally deposited over $530 million. Compl. ¶270." Opposition at 22-23.

8

Therefore, by its own admission, Plaintiff began investing in BLMIS <u>beginning in 1997</u> and had invested close to $900 million in BLMIS <u>through 2002</u>.

As discussed, the Amended Complaint's own allegations assert that Movant APAM served as Alpha Prime's investment manager "<u>from June 1, 2003</u> through December 2008." Amended Complaint, ¶ 352. And while the Amended Complaint does not provide a date for the iniation of Movants Regulus and Caruba's retention by Senator Fund, it does reflect that Senator Fund was not created until <u>September 2006</u>. *Id.* at ¶ 273. As to Movant Tereo, the only involvement alleged against it is that Tereo "wholly owns" APAM. Regulus and Caruba. *Id.* at ¶ 273. Accordingly, Tereo's involvement is not alleged <u>until June 2003</u>, when APAM is alleged to have been retained by Alpha Prime.

Therefore, in <u>this</u> litigation, Plaintiff admits it had invested in BLMIS, raised that investment to nearly $900 million, and retained that investment for more than five years *prior to any alleged involvement* by Movants in BLMIS-related activity. Realizing it has a chronology problem, Plaintiff adds in its brief that "OSUS continued retaining and increasing its investment...through 2006" though it does not give a dollar amount for that additional investment. Pl. Br. at 22. Taken together, these admissions mean, at the least, Plaintiff cannot allege that Movants' activities caused it to invest in BLMIS in 1997 nor caused its massive investments into BLMIS through 2002, but only that Movants somehow caused Plaintiff to "retain" its investment after 2003 and invest an undisclosed additional amount between 2003 and 2006.

Even this now truncated allegation fails to demonstrate proximate causation. "Missing" from the Amended Complaint, to apply the logic of the Second Circuit, is any allegation of how the Movants as "investment managers" of two unrelated Feeder Funds "caused" Plaintiff to retain and increase its existing six-year-old investment in BLMIS. In fact, the logic of Plaintiff's position

9

is entirely undercut by its own theory of liability. Plaintiff was a sophisticated investment who claims to have lost over a billion dollars in BLMIS. Amended Complaint, ¶429. Plaintiff received customer statements from BLMIS as did the other Feeder Funds. Amended Complaint, ¶ 25. Accordingly, for six years prior to the earliest involvements of the Movants, the "red flags" that "strongly suggested that BLMIS was a fraud" were staring Plaintiff in the face. Amended Complaint, ¶140. According to Plaintiff's own allegations, the "numerous trading impossibilities" reflected in the customer statements as well as the other red flags such as Madoff's fee structure were not just "suggestive" of fraud but were "qualitive evidence" of fraud which the Feeder Funds chose to ignore. Amended Complaint, ¶ 141. Following Plaintiff's own logic, the conclusion is unavoidable, that the proximate cause of Plaintiff's retention and increase of its investment after six years of being a BLMIS account holder was not the arrival of Movants on the scene, but its own failure to heed the "myriad" indicia of fraud of which it had in its own knowledge. *Id*.

## CONCLUSION

For the foregoing reasons, Alpha Prime Asset Management Ltd., Regulus Asset Management Limited, Carruba Asset Management Limited, and Tereo Trust Company Limited request that the Court enter an Order dismissing the Amended Complaint with prejudice as to them in its entirety.

Dated: December 20, 2018
      New York, New York        **DUFFYAMEDEO LLP**
                                                 By: /s/ Todd E. Duffy
                                                        Todd E. Duffy
                                                        Douglas A. Amedeo
                                              275 Seventh Avenue, 7th Floor
                                              New York, NY 10001
                                              Tel: (212) 729-5832
                                              Fax: (212) 208-2437
                             Attorneys for Alpha Prime Asset Management Ltd., Regulus Asset Management Limited, Carruba Asset Management Limited, and Tereo Trust Company Limited.